RICHARD C. LYLE v. PETER LESIA ET AL.

*Highway by user—Abandonment and discontinuance—Non-user—Estoppel—Injunction.*

1. Proof of *public* travel over *wild* and *unoccupied* land, on *different* tracks, as suited the convenience of travelers, whose course was shaped with reference to *high* and *low* water, the land bordering on a river, is insufficient to establish a highway by *user*.

2. Where a highway was surveyed, and more or less work done thereon for some ten years, when a *new* road was opened, and the *old* one *abandoned* by the *public*, there being for twelve years no travel over it except by stragglers and lumbermen on foot, and the teams of persons owning the land, who used the *old* road for their convenience in working the premises, and six years after such abandonment the land-owner fenced in the land, which remained undisturbed for six years, when the commissioner of highways assumed to enter upon the premises to repair the *old* highway,—

   *Held,* that an injunction was properly granted to restrain such action, there being no principle of equity that will sanction or sustain such attempt to rehabilitate an *extinct* road with the life it may have once had by reason of its *user* before its abandonment.

3. Where a highway commissioner *altered* and practically *vacated* a highway, which action was accepted, and treated for twelve years as *valid* by every one interested, and by the public generally,—

*Held,* in a suit by the land-owner to enjoin the public authorities from re-opening said road, that they cannot defend by showing the *illegality* of the *action* of the commissioner in *vacating* the road for want of the required statutory notice to the landowners.

4. In this State a highway, or any portion of it, can be lost by *nonuser. Gregory v. Knight,* 50 Mich. 64.

Appeal from Saginaw. (Gage, J.) Argued June 30, 1886. Decided January 6, 1887.

Bill filed to enjoin the working of an abandoned highway. Complainant, appeals. Decree dismissing bill reversed, and one entered granting relief prayed for. The facts are stated in the opinion.

*William G. Gage* (*D. W. C. Gage,* of counsel), for complainant:

A dedication of land for a highway must be under such circumstances as to indicate an abandonment of the exclusive use of the soil to the public by the owner: *People v. Jones,* 6 Mich. 176; *Harding v. Jasper,* 14 Cal. 649, and cases cited.

The use by the public of waste, uninclosed land as a road, even with the owner's knowledge, does not constitute a dedication to the public of the land used: *Stacey v. Miller,* 14 Mo. 479; *Harding v. Jasper,* 14 Cal. 648.

Strictly speaking, there is no such thing as a highway by prescription: Angell, Highways, § 131; but the law presumes a dedication after twenty years: *Bumpus v. Miller,* 4 Mich. 163, 164.

The action of the commissioner in altering the highway amounted to an abandonment and discontinuance of the portion affected thereby: *Com. v. Westborough,* 3 Mass. 406; *Hobart v. Plymouth,* 100 Id. 159; *Goodwin v. Marblehead,* 1 Allen, 37.

The defendants are estopped from questioning the legality of the commissioner's action: Bigelow, Estoppel (4th ed.), 530, 642; *Clay Ins. Co. v. Huron S. & L. Co.,* 31 Mich. 346; *Prescott v. Patterson,* 49 Id. 622; *Baker v. Braman,* 6 Hill, 47; *Embury v. Conner,* 3 N. Y. 511; *Detmold v. Drake,* 46 Id. 324.

*Tarsney & Weadock* (*T. A. E. & J. C. Weadock,* of counsel), for defendants:

The court may order a jury for the trial of an issue of fact, etc.: How Stat, §§ 6645, 6646.[1]

The public had acquired a highway by user: *Bumpus v. Miller,* 4 Mich. 159; *Ellsworth v. Grand Rapids,* 27 Id. 250; *Wicks v. Ross,* 37 Id. 464; *Nye v. Clark,* 55 Id. 599; *Colden v. Thurbur,* 2 Johns. 424; *Hanson v. Taylor,* 23 Wis. 547; *Hart v. Red Cedar,* 63 Id. 634.

The highway was never legally discontinued, the highway commissioner's notice, if properly served, of which there is no proof, being insufficient: *Shue v. Highway Commissioner,* 41 Mich. 638.

Such service is a jurisdictional fact, and it must appear by legal evidence to have been made: *People v. Highway Commissioners,* 14 Mich. 528; *Dupont v. Highway Commissioners,* 28 Id. 362.

MORSE, J. The complainant filed his bill in the circuit court for the county of Saginaw, in chancery, to enjoin defendants from plowing up and digging and ditching upon his premises.

He claims that he is the owner in fee, and has had possession, by himself and his grantor, for 12 years prior to the filing of his bill, of a strip of land about one-half mile in length, lying between the Cass river and the Flint & Pere Marquette Railroad track and right of way; that said strip is occupied by him and fenced, and contains about 10 acres, and is of the value at least of $1,000; that the same is under cultivation, and a valuable crop of grass was growing thereon, when the defendants entered upon the premises, and proceeded to dig up the land, and destroy said crop; that said defendants threaten to continue to enter upon his lands, and destroy his fences inclosing the same, and to dig up and ditch said lands so as to make them unprofitable for cultivation, and thereby valueless; that this strip of land is from four to fifteen rods wide, and part of the bottom lands of the Cass

---

[1] See Laws of 1887, Act 267, p. 358, enlarging power of jury, etc.

river, and subject to overflow; and that the operations and trespasses of the defendants, as aforesaid, will cause the surface soil, as the complainant fears, to be washed away in the freshets of said river, and the value of said land be destroyed.

The defendant Lesia answers, admitting the ownership of the premises to be in the complainant, and the cultivation of the same, but claims that said ownership is subject to the easement of a public highway running through the lands, which highway is not under cultivation, and has been for over 30 years a well-defined and used public highway.

He avers that he is highway commissioner for Bridgeport, within which township the said highway is situated, and that he entered upon such lands in the performance of his duty as such commissioner, and the other defendants entered as laborers under him ; denies that he or they did any injury, or threatened any, to the land or crops of complainant ; avers that said land embraced, as he claims, in the highway, has been open and occupied as a public highway for 35 years, up to and including the year 1871, and since 1871 has been used as a highway by parties in that vicinity who desired to use the same ; that before 1871 there was a public bridge across the Cass river, from the foot of State street, in the village of Bridgeport, and in that year a new bridge was built across the same river about one-half mile above said old bridge, which new bridge was afterwards used for crossing the river, instead of the old one, until the summer complainant's bill was filed (1882), when said last-built bridge became rotten, and unfit for use and unsafe for travel ; that the people of the township of Bridgeport voted to build a new bridge, in pursuance of the statute, upon the site of the first-named or old bridge, and that the authorities of said township, acting under vote, have made a contract for the erection of a bridge upon said old site, the cost and expense of which will exceed the sum of $1,500, and that, in order to make said highway

passable and fit for public use, it is necessary to repair and improve said highway where it runs through complainant's lands; that said highway and bridge will be the only means of crossing said Cass river in the town of Bridgeport.

He also avers that in 1861 himself and one Jesse Irish were highway commissioners of Bridgeport; and, the original record of the laying out of this highway being lost, the said commissioners, for the purpose of re-establishing said highway, caused the same to be surveyed, which survey is set forth in his answer.

Under the issue made by the pleadings, as aforesaid, the case was heard in December, 1882, by a jury called by the circuit judge in order to determine in an advisory manner these questions of fact:

1. Was there a highway across complainant's land July 10, 1882?

2. If so, where was the same located?

The jury found there was such a highway, and that it was located upon a survey made by one Pettibone.

October 26, 1885, the cause was heard, upon pleadings and proofs, before the same circuit judge, Hon. Chauncey H. Gage, who entered a decree dismissing the bill of complaint.

Upon a careful examination of the record, we think the decree of the court below is wrong, and that the complainant is entitled to the relief sought in his bill.

It appears from the proofs that in an early day, as far back as 1840, people residing in the vicinity commenced traveling along the river bottom, partially upon the land now owned by complainant, crossing the river by ferry or fording.

Between 1852 and 1857 a bridge was built over the Cass river for the accommodation of this travel, which bridge was used continuously until 1871, when it became old and rotten, and was torn down, and a new bridge built.

The highway claimed by defendants was never laid out and established as a public road, nor is there any evidence of any

proceedings attempted under the statute for that purpose. There is some misty testimony of a survey made in 1845, or thereabouts, but nothing tangible.

In 1861 one Pettibone, a civil engineer, made a survey of this highway, the center line of which he claims was then the traveled part of the road. This survey was recorded in the record-book of the commissioners of highways of the township wherein the road was situated. He also testifies that the line of his survey is the same as the road worked by the defendant. Another surveyor testifies, however, that the present line does not agree with the survey of Pettibone.

If this highway, as now claimed by the defendants, ever became a public road, it became one by user only.

We do not think the testimony as to the land used for travel up to the time of Pettibone's survey is definite enough to establish a highway by user. The land was wild, unoccupied, and uncultivated. The testimony shows there were several tracks, and people traveled all over the bottom, as suited their convenience; shaping their course also in reference to high and low water times.

After Pettibone's survey, there was more or less highway work done upon this road, and the public seemed to have treated it as a public highway up to the year 1871.

In 1870 or 1871 a new bridge was built over the Cass river, about half a mile from the site of the old one; and thereupon, as we think, the public formally abandoned the highway then located and used upon the line of the Pettibone survey.

This highway was known as the Taymouth road, and on the twenty-first day of February, 1870, an application was made to the commissioners of highways, by a large number of freeholders, to alter this road, so that it might cross the new bridge instead of the old one. The commissioners proceeded under the application, and altered the same.

After this action, the road now claimed by the defendants

was virtually discontinued and abandoned. The travel thereafter went the new way.

In 1874 that portion of the old highway, from river bank to river bank, the site of the first bridge, was discontinued and vacated by the commissioners.

For a period of 12 years, from 1870 to 1882, there was no travel over the old road upon the Pettibone survey, except by stragglers and lumbermen on foot, and the teams of persons owning the land, who used the same for their convenience in working the premises.

The lots owned by complainant, and comprising the lands involved in this controversy, were State lands until 1851. In that year Isaiah J. Hudson purchased these lots from the State, and received a certificate therefor from the proper officer. Some of this land was improved and worked in 1859. The complainant rented the premises about two years before he purchased, and in 1876 fenced them in, which fence remained until disturbed by defendants.

No action was taken by the public, after the abandonment of this highway, to re-establish it, but the defendant claims it has never ceased to be a public road.

In this State it has been decided that a highway, or any portion of it, can be lost by non-user alone. *Gregory v. Knight,* 50 Mich. 61, 64.[1]

But it is also contended by defendant that the non-user must be for the statutory period of 15 years, and that the time falls short in this case. But where there is a formal abandonment, and the opening of a new road, and its use instead of the old one, the case is different.

The only objection urged against the action of the commissioners in altering and practically vacating, by such alteration, this part of the road upon complainant's premises, is that the records do not show that the highway commissioners gave the notice required by law to the persons owning the

[1] See *Coleman v. F. & P. M. R. R. Co., post.*

lands embraced in the road vacated. As long as the complainant and others owning the premises raised no question upon this point, and the action of the commissioners has for 12 years been accepted as valid by every one concerned or interested in the premises, as well as by the public generally, we do not think the public authorities can now be heard to establish the illegality of their own proceedings in order to acquire the lands of the complainant for public use without compensation. Under their action, in which all have acquiesced, he has gone on and improved the premises, and perhaps purchased them, relying upon the fact that the road was abandoned, as he bought the land since the discontinuance of the highway.

There is no principle of equity that will sanction or sustain the action of defendants in now seeking to rehabilitate this extinct road with the life it may have once had by reason of its user before its abandonment.

The decree of the court below dismissing the bill of complaint is reversed, and a decree will be entered in this Court enjoining defendants, in accordance with the prayer of complainant's bill, and costs of both courts awarded him.

The other Justices concurred.