MARY L. MASON

*v.*

JAMES ROSS.

[Decided October 27th, 1908.]

1. Dedication of a public highway may be made by the creation of an easement of way in a deed of conveyance describing the way as a street, and the dedication may be made *in presenti* to be accepted and used *in futuro*. Until accepted by the public authorities, either formally or by being worked and repaired, it remains a private easement.

2. Non-user of a public highway for more than twenty years will not operate to extinguish the public right of easement.

3. Non-user of a private way for more than twenty years will operate to extinguish an easement, if coupled with an adverse enjoyment.

4. A right of way, either public or private, may be lost by abandonment, and it is not so much the duration of the cesser to use but the nature of the acts done, which are material in determining whether or not the easement has been extinguished by an equitable estoppel arising out of matter *in pais*. The time of non-user may be immaterial.

On final hearing on bill, answer, replication and proofs.

*Mr. John H. Backes,* for the complainant.

*Mr. William J. Walsh* and *Mr. Barton B. Hutchinson,* for the defendant.

The accompanying diagram contains a sufficient number of the lines on the page of the city atlas of Trenton, which was offered in evidence, to illustrate the references to boundary lines and dimensions set forth in the opinion.

WALKER, V. C.

The defendant commenced the erection of a dwelling-house upon a lot of land twenty-five feet in width and two hundred and four feet in depth, fronting on the easterly side of Southard street, in the city of Trenton, and the progress of the work was arrested by an injunction of this court.

The complainant claims that she has an easement over the lands on which the building stands, either as a way appurtenant to other lands of hers binding upon the premises in question, or as one of the public by reason of a dedication of the way as a public way or street.

It is conceded that Benjamin Albertson owned the *locus in quo* including the lands of the complainant and other adjacent land in 1868, and in October, 1870, conveyed to John Taylor part of those lands, beginning on the easterly side of Southard street and running by the northwesterly line of a proposed street twenty-five feet in width two hundred and four feet deep. This course is the southerly line of part of the complainant's land, which land came to her mediately from Benjamin Albertson through sundry mesne conveyances. At a later period, the time not being fixed, a row of houses was erected on the southerly side of this street, called and known as "murderers' row." Conveyances were made of houses in this row as being a certain distance easterly from Southard street and on the southerly side of Carroll street, namely, the street in question. In the year 1895, Albertson, having disposed of all of the rest of the tract, conveyed his estate in that part of it sometimes called Carroll street and sometimes East Carroll street, being the lot twenty-five by two hundred and four feet, on which the defendant has commenced the erection of his building, to the Mechanics Mutual Loan Association, describing the same by metes and bounds, but not calling it a street." In December, 1895, the loan association conveyed to the defendant and John G. Hess its lands at the site in question and the defendant claims title by virtue of the conveyance from the loan association to himself and Hess, and says that by virtue thereof they entered into the full and absolute possession of the tract and held the same; and subsequently in the same year erected on the lands about one

hundred feet easterly from Southard street a garbage crematory, covering about sixteen feet of the width of the land called a street, and used and operated the same for a number of years without any objection or complaint on the part of the abutting owners, one of whom was a predecessor in title of the complainant; that the defendant and Hess filled up the lot with earth and used it in connection with the crematory. It was necessary for them to fill the lot with earth to get access to it because of the abutment wall of the Southard street bridge, which will be referred to subsequently. Hereafter the defendant will be referred to alone as the owner of the servient tenement.

The complainant, as already said, was not an abutting owner at that time. Her title was derived by devise from her husband, whose will was proved August 19th, 1898. His title was derived by conveyance dated December 10th, 1897.

In 1889 the county of Mercer built an elevated bridge across the railroad and canal on Southard street north of the *locus in quo,* and raised the grade of Southard street by way of approach to the bridge to a height of about seventeen feet across the tract or street in question, thus shutting off access to Southard street from East Carroll street, so called. Some time since, the houses known as "murderers' row" were demolished, whereupon all apparent traces of the street became obliterated. During the time the "row" was in existence there appear to have been a few trees set out, and some sort of path by way of sidewalk seems to have existed from the "row" to Southard street. There apparently never was any clearly defined street at the point in question, the houses being built on what had the appearance of a small common.

The intention of Albertson was undoubtedly to lay out and dedicate a street to be called East Carroll street leading from Southard street easterly. Not only did he and his successors in title make conveyances with reference to the *locus in quo* as a street, but the title to part at least of the land on the Albertson tract which has come to the defendant makes express mention of the street and put him upon notice as to its locality, if, in fact, he did not know of its lines. Upon this score there is no difficulty.

It is conceded that the municipal authorities of Trenton, within whose corporate limits are the premises in question, never accepted the proposed street, or repaired or worked it, assuming the public to have gained an easement therein by dedication or user.

Counsel for complainant relies largely upon *Booraem* v. *North Hudson County Railroad Co., 40 N. J. Eq. (13 Stew.) 557,* in which the court of errors and appeals said:

"When the language of a deed is sufficient to create an easement of a right of way over the premises conveyed as an appurtenant to the grantor's premises lying adjacent thereto, and words are added indicating a purpose to dedicate the way as a public street—*Held,* that the creation of a public right to be enjoyed *in futuro* whenever the public authorities might see fit to accept the dedication, was not inconsistent with the private easement which enured to the grantor immediately from the grant, and that the latter was entitled to the use of the way, although the public had not accepted the dedication."

No map or plat of the tract showing the street in question was ever filed, and the defendant lays great stress upon that fact, and claims that there is no evidence of a dedication. But I do not understand that a map or plat is necessary, for, as was said by Vice-Chancellor Reed, in *Seibert* v. *Graff, 38 Atl. Rep. 970:*

"Although there may be no reference to a map, yet the fact that land is described in a deed as bounding upon a street, and there are marked, upon the grounds adjacent to the land sold, traces of the existence of a street, this condition of affairs will produce the same result."

The complainant succeeds and the defendant fails on the question of dedication. The dedication was made by Albertson *in presenti,* to be accepted and used *in futuro.* See *Mayor of Jersey City* v. *Morris Canal Co., 12 N. J. Eq. (1 Beas.) 547, 563.*

Nevertheless, in my opinion, the decision of this case does not depend upon the question of dedication or no dedication, but upon the question of equitable estoppel. In other words, has there been such an abandonment and cesser of the use of this strip of land called a street as to disentitle the complainant to the relief she seeks, namely, an injunction restraining the defendant

from in any manner interfering with her use of the street, and compelling the defendant to remove so much of the building as he has erected upon its site?

That there can be an abandonment of both public and private ways is supported by abundant authority.

On the hearing an offer was made on behalf of the defendant to show that the Mechanics Mutual Loan Association, while the owner of "murderers' row," sued the county of Mercer for closing up the street or way in question, and that Peter Dehe, while the owner of the tract now owned by the complainant, made a deed of release to the county for the damages which he had sustained by the building of the approach to the Southard street bridge which shuts off access from the alleged street to Southard street. Undoubtedly, it was these proceedings and the obstruction of the street or way which led Albertson in 1895 to make a conveyance of the street to the loan association. He and the association certainly believed that all rights in the way were extinguished, and the association unquestionably conveyed to Hess and Ross, upon the understanding of all parties, that the easement, public or private, had been extinguished. The offer of the testimony adverted to was excluded, and I think properly so as to the suit for damages, but not so as to the release from Dehe, as will hereafter appear. Surely, if the grade of Southard street had not been raised and an embankment thereby erected across the entrance to East Carroll street, so called, the complainant's rights would not have been lost by the conveyance of the fee of the street by Albertson to the loan association, and by it to Hess and Ross, and by their obstruction of it with their crematory and the defendant's present obstruction with his building. If the way were a public one its being obstructed for over twenty years would not extinguish the public right. If a private one, the right has not been lost by non-user, because twenty years of non-use has not continued, coupled with an adverse enjoyment.

The easement of way, whether public or private, over the *locus in quo,* has been lost to the complainant, if lost at all, by reason of the changed conditions of and concerning the whole tract originally owned by Albertson and of which her lands are a part, and by reason of the operations of the defendant upon the tract

in question without protest from the complainant and her predecessors in title, whereby an equitable estoppel precluding the complainant from asserting the right to use the *locus in quo* as a way or street has arisen.

True it is that when only the foundations of the house, now partly erected upon the tract, were built, the defendant was warned to desist, and in the face of warning, he proceeded with his building operation until stopped by the injunction of this court, but, after all, access over the *locus in quo* to Southard street had been cut off between 1889 and 1905, a period of six years, by the presence of the abutment wall built across it on Southard street by way of approach to the Southard street bridge, which wall showed a perpendicular face of some seventeen feet, and the defendant, after acquiring the land, built a garbage crematory on part of this way, and by filling in with earth made a way from the crematory out onto Southard street. He was not obliged to make this embankment for the benefit of abutting owners. He made it for the benefit of himself. He was not required to maintain it for the benefit of abutting owners, and he removed it, or at least that part of it where the cellar walls of the building whose erection he has commenced are placed.

The annexed diagram shows the exact situation of the *locus in quo* with reference to the whole premises originally owned by Albertson, more than one-half of which he conveyed to Dehe and which property (Dehe's) is now in the possession of the complainant. The strip of land which was the street or way in question is a trifle larger than two ordinary city building lots. It is twenty-five feet in width by two hundred and four feet deep. It is a *cul-de-sac,* but that would not prevent its becoming a highway. *State* v. *Bishop, 39 N. J. Law (10 Vr.) 226, 228.*

The city of Trenton never accepted the dedication of this so-called street, or worked or repaired it, which is not to be wondered at, and, since the county of Mercer has raised the grade of Southard street, through which street it laid and built the abutment wall across this way to the height of some seventeen feet to the bridge beyond, it is safe to say that the city of Trenton never will have anything to do with the *locus in quo* as a

street or public way.  To do so would be absurd.  Since the demolition of "murderers' row" there is no occasion for the use of this street as -a way appurtenant to the lands whereon the tenements which composed that row were erected.  This property, where stood the row, as I understand it, is now in the defendant.  However that may be, so far forth as the complainant is concerned, the situation is as though all the land on the tract formerly of Albertson, excluding the tract owned by the complainant and excluding the street, is in the defendant, for the complainant does not claim a right to use the way for access to any premises save her own.  Now, as a matter of fact, her premises are one hundred feet front on Southard street, binding northerly on the way in question and running round the same to the rear, forming an L, the rear portion being seventy-one feet wide and extending down to and having a frontage of that width on Raywood alley, an alley ten feet wide, which runs out into Southard street one hundred feet southerly from the southerly line of the way in question.  The complainant not only has access to Southard street through this alley, but also has access to Southard street under the bridge north of the *locus in quo* and north of the terminus of the abutment wall.

The defendant denies that the complainant has any easement in the premises and claims title in himself, which title does not depend upon prescription, but upon his deeds and the fact of an abandonment of the easement, public or private, whereby the rights of way over the street in question were extinguished.

In *Baldwin* v. *Trimble, 85 Md. 396* (at *p. 402*), the court said:

"Whilst an encroachment on a highway is conclusively settled in Maryland to be a public nuisance which can never grow by prescription into a private right  *  *  *  yet it may be true and in perfect harmony and accord with that doctrine that cases, concerning public streets, can arise of such a character and founded upon an actual and notorious abandonment of the highway by the public that justice requires an equitable estoppel shall be asserted even against the public in favor of individuals.  In .that event, such cases, as observed by Judge Dillon, 'will form a law unto themselves,' and will 'not fall within the legal

operation of limitation enactments　＊　＊　＊　there is no danger,' he continues, 'in recognizing the principle of an *estoppel in pais* as applicalbe to such cases, as this leaves the court to decide the question, not by the mere lapse of time, but by all the circumstances of the case, to hold the public estoppel or not as right and justice may require.' "

In this case (*Baldwin* v. *Trimble*) the court went on to review the facts which in its opinion created an equitable estoppel against the public.  There was no evidence that the road was ever laid out by the municipal authorities or that it was ever accepted by them or kept in repair at public expense, but, if ever claimed by the public at all, it was finally abandoned, not because encroached on by abutting proprietors (which in fact was the case), but because no longer needed by the public.  Being no longer needed and no longer used it was actually closed to travel, and permanent structures were built across its entire width for a distance of seven squares of its length.  There seemed to have been no objection to the erection of buildings across the road, and the court remarked that it would be inequitable in the extreme to permit the public to reassert a claim to the bed of the road, after having actually abandoned it altogether, and to subject every individual who had innocently and in good faith expended money in the construction of buildings upon it, to an indictment for maintaining a public nuisance and to the penalty of removing the buildings themselves, when there was no longer the slightest need for the road.  The court further remarked (at *p. 404*):

"If ever there was a case where the doctrine of equitable estoppel ought to prevail against the public it certainly is the case at bar, and we accordingly hold—not that the appellant has acquired by prescription a right to that part of Lanvale road between his two lots—but having title thereto under his deeds subject to an easement in the public and the easement having been abandoned so that the public are equitably estopped to reclaim it, his title to the parcels of the road claimed by him is merchantable."

In the case just referred to (*Baldwin* v. *Trimble*), the abandonment of the road had existed for a period of twenty-five years,

but I do not understand that the abandonment must be for such a period as would under the statute of limitations operate to defeat a private right of way; on the contrary, the rule is just the opposite, and every case in which an equitable estoppel is claimed depends upon its own particular facts.

In *Pope* v. *Devereux, 5 Gray 409,* the supreme judicial court of Massachusetts said (at *p. 412*) :

"It is not the duration of the cesser to use the easement, but the nature of the act done by the owner of the easement, or the adverse act acquiesced in by him, and the intention which the one or the other indicates that is material. *The Queen* v. *Chorley, 12 Ad. & E. (N. S.) 515.* And a cesser of use for a less period than twenty years, accompanied by acts clearly indicating the intention to abandon the right, is sufficient."

Of course, a private way may be extinguished by an adverse possession for the full period of twenty years. Such a possession will defeat the title to an easement by analogy to the statute of limitations. *Street* v. *Griffiths, 50 N. J. Law (21 Vr.) 656, 658.*

Non-user accompanied by acts on the part of either the owner of the dominant or the servient tenement which manifest an intention to abandon and which destroy the object for which the way was created or the means of its enjoyment will effect an abandonment. *23 Am. & Eng. Encycl. L. (2d ed.) 42.*

In *Queen* v. *Chorley, 12 Ad. & E. (N. S.) 513,* Lord Chief-Justice Denman remarked (at *p. 517*) :

"The learned judge appears to have told the jury that no interruption by the public for a shorter period than twenty years would destroy the right (in a private way). If this were laid down as a rule of law, or even as a conclusive presumption of fact, we think, in the former case, it was erroneous, and in the latter would be likely to mislead the jury, as turning their attention to a definite period of time as the ground for decision, when time might in truth be wholly immaterial, or only in part material.    *    *    *

"The learned judge appears to have proceeded on the ground that, as twenty years' user in the absence of an express grant would have been necessary for the acquisition of the right, so

twenty years' cesser of the use in the absence of any express release was necessary for its loss. But we apprehend that, as an express release of the easement would destroy it at any moment, so the cesser of use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect without any reference to time. For example, this being a right of way to the defendant's malt-house, and the mode of user by driving carts and wagons to an entrance from the lane into the malt-house yard, if the defendant had removed his malt-house, turned the premises to some other use, and walled up the entrance, and then for any considerable period of time acquiesced in the unrestricted use by the public, we conceive the easement would have been entirely gone. It is not so much the duration of the cesser as the nature of the act done by the grantee of the easement, or of the adverse act acquiesced in by him, and the intention in him which either the one or the other indicates, which are material for the consideration of the jury.

"The period of time is not only material as one element from which the grantee's intention to retain or abandon his easement may be inferred against him, and what period may be sufficient in any particular case must depend on all the accompanying circumstances.

"This is the principle on which the judgments of all the members of this court proceeded in *Moore* v. *Rawson, 3 Barn. & C. 332,* and which was adopted in *Liggins* v. *Inge, 7 Bing. 682, 693.* It is true that those were cases between two individuals, and not between the public and one individual. But that can make no difference."

The doctrine of *Queen* v. *Chorley* has been approved in this state. Said Mr. Justice Depue, speaking for the supreme court in *Horner* v. *Stillwell, 35 N. J. Law (6 Vr.) 307* (at *p. 314*) :

"Even where the cesser of use has not been for twenty years, adverse acts on the part of the owner of the servient tenement, which have been acquiesced in by the owner of the easement, are material for the consideration of the jury on the question of abandonment. *Queen* v. *Chorley, 12 Q. B. 515.* Under such circumstances abandonment arises out of the principles of an equitable estoppel."

The same learned judge, speaking for the court of errors and appeals in *Raritan Water Power Co.* v. *Veghte, 21 N. J. Eq. (6 C. E. Gr.) 463,* cited *Queen* v. *Chorley* (at *p. 480*), where he said:

"Abandonment is a question of intention. Non-user is a fact in determining it. * * * Its weight must depend upon the intention to be drawn from its duration, character and accompanying acts."

In *Jordan* v. *City of Chenoa, 166 Ill. 530,* it was held:

"While the statute of limitation does not run in favor of an individual against a municipality holding streets and alleys for the general public under acceptance of a dedication, yet the doctrine of equitable estoppel arising from abandonment and non-user may be invoked against it."

*City of Big Rapids* v. *Comstock, 65 Mich. 78,* was a case in which the city filed a bill to enjoin the erection of a building that encroached four and one-half inches on a street, and it was held that equity would not grant relief, it being out of all proportion to the nature and extent of the injury done or likely to be sustained by the encroachment.

In *Lyle* v. *Lesia, 64 Mich. 16,* it was said:

"Where a highway was surveyed, and more or less work done thereon for some ten years, when a new road was opened, and the old one abandoned by the public, there being for twelve years no travel over it except by stragglers and lumbermen on foot, and the teams of persons owning the land, who used the old road for their convenience in working the premises, and six years after such abandonment the landowner fenced in the land, which remained undisputed for six years, when the commissioner of highways assumed to enter upon the premises to repair the old highway—*Held,* that an injunction was properly granted to restrain such action, there being no principle of equity that will sanction or sustain such attempt to rehabilitate an extinct road with the life it may have once had by reason of its user before its abandonment.

"Where a highway commissioner altered and practically vacated a highway, which action was accepted and treated for twelve years as valid by everyone interested, and by the public generally

—*Held,* in a suit by the landowner to enjoin the public author-
ities from reopening said road, that they cannot defend by show-
ing the illegality of the action of the commissioner in vacating
the road for want of the required statutory notice to the land-
owners."

Now, as we have seen, cases of this character, that is, cases in
which an easement is said to be extinguished by abandonment,
form a law unto themselves, that is, each case depends upon its
own particular facts as to whether or not there has been an
abandonment, irrespective of any question of the operation of a
statute of limitations. Abandonment depends upon the nature
of the acts done or acquiesced in with reference to the obstruc-
tion of the way. The time of the cesser of the use may be wholly
immaterial; and the period of time in any given case must depend
on all the accompanying circumstances.

Now, further, the facts upon which an abandonment has been
worked in this case are the building of the abutment wall to a
sheer height of some seventeen feet entirely across the way in
question, thus completely obstructing it; the fact that it re-
mained so obstructed for the six years between 1889 and 1905;
that the complainant's predecessor in title, Dehe, or his devisee,
had title to the premises during all that time; that the building
of an embankment by the defendant from the top of the South-
ard street wall down to and past the crematory which he erected
partly on the strip in question was a decided appropriation by
him of the way to his own use. This he did during the holding
of Dehe, whose rights in the way had become extinguished.
Dehe and his devisee retained title until July, 1897, while the
proofs show that the defendant acquired title and built the cre-
matory in 1895.

These further facts are pertinent: The embankment has been
removed at the abutment wall, at least to the depth of the cellar
of the building which has been partly erected, say to a depth of
six to eight feet, and, if opened as a street, the complainant
would, like her predecessors in title, be able only in traversing
the way to go up against a stone wall. The complainant has
ingress and egress to and from her lands into Southard street

just north of the *locus in quo,* and on the south into Raywood alley, and, therefore, no necessity exists for use of the way by her.

The truth is there was an absolute physical extinction of the way for all practical purposes by the building of the Southard street bridge with its abutment wall reaching across and closing up the way. It must be presumed to have been done by proper municipal authority. Its closing may have been the taking of private property for public use and for which persons having an easement of way in the so-called street were or are entitled to compensation for the damages sustained.

This brings me again to the offer of the defendant to show that Dehe gave a release to the county for the damages he had sustained by the obstruction of the way by the building of the abutment to the bridge. I am now satisfied that I erred in excluding the evidence. Although the giving of the release by Dehe while the owner of an easement in the *locus in quo* did not create an estoppel by deed between him and the owner of the servient tenement, it was, nevertheless, an act *in pais* recognizing the practical extinguishment of the easement, and is evidence of his abandonment of all claim to have the way open for use. Upon familiar principles the acts and declarations of former owners made during the existence of their title bind their successors in title. *Horner* v. *Stillwell, 35 N. J. Law (6 Vr.) 307;* see, also, *Raritan Water Power Co.* v. *Veghte, 21 N. J. Eq. (6 C. E. Gr.) 463.* However, the erroneous exclusion of the release is harmless to the defendant, because, without the proof that it would make, I conclude that he should prevail. If I thought otherwise, and if proof of the release of Dehe to the county were, in my judgment, essential to the defendant's case, I would continue the hearing and permit him to make proof of it. *Whitehead* v. *Hamilton Rubber Co., 53 N. J. Eq. (8 Dick.) 456.*

It would be stretching equity and good conscience too far, I think, to hold that this mere *cul-de-sac,* no bigger than a couple of city lots, should be opened by a mandatory injunction, so that the complainant could have the privilege of walking over it up against a stone wall, when, as seen, for six years it was absolutely obstructed by the wall, in consequence of which obstruction a row of houses to which it was formerly tributary were demol-

ished, because no longer accessible, when afterwards defendant on acquiring title to the tract built his own embankment to give him access to Southard street for his own purposes and afterwards removed the embankment, at least in part, and when the complainant has two places of ingress and egress to her premises, one of which is just north of the *locus in quo.* To paraphrase the language of one of the cases, there is no principle of equity that requires the court to rehabilitate this extinct way because of the life it once had by reason of its user before abandonment.

The county of Mercer rendered absolutely useless, if it did not totally extinguish, this easement. The complainant's remedy, if any she has (and if the lapse of time and Dehe's release does not preclude her), is against the county for damages rather than against the owner of the fee in the *locus in quo,* who is, under all the circumstances, an innocent purchaser for value, and who should not be required to keep the way open for the complainant's useless and purposeless enjoyment. I say the defendant is an innocent purchaser for value under the circumstances, and the circumstances justify the assertion. It must have been perfectly apparent to every one that by the building of the approach to the Southard street bridge the way in question, sometimes dignified by the name of a street, was effectually and permanently closed. It has been so acted upon. Of this there can be no doubt. The defendant acquired title for value in 1895, thirteen years ago, and has been in undisputed possession till now. He built and operated a garbage crematory upon part of it, using an embankment which he erected as a way to the crematory over the lot in question. It was not when he removed part of the embankment, but when he commenced the erection of his building that complaint was made. In my judgment, he is entitled to remain in undisturbed possession.

It should not be forgotten that the complainant's devisor purchased from Dehe's devisee the premises, which have always surrounded the *locus in quo* on two sides. It does not appear when Dehe died, but he was alive during part, if not all, of the six years that the way was effectually obstructed by the abutment wall. When the complainant's devisor purchased of Dehe's devisee he saw, if he did not see before, the embankment built by

the defendant, running down from the wall on Southard street to his, defendant's crematory, which occupied sixteen out of the twenty-five feet of the way in question.

The complainant lays great stress upon the fact that her deed calls for a tract bounded upon the *locus in quo,* describing it as a street twenty-five feet wide and two hundred and four feet deep. This "street" was so decidedly obstructed by the crematory and was of such a peculiar character when her advisor took title, as to put him upon notice of all the antecedent facts and conditions which had obtained with reference to the *locus in quo,* and he was effectually estopped by constructive notice, if he did not already have or then acquire actual notice of the practical extinguishment of the easement. *Raritan Water Power Co.* v. *Veghte, 21 N. J. Eq. (6 C. E. Gr.) 463, 478.* Of course, the complainant acquiring title by devise, took her lands in the exact situation in which her devisor left them.

The right the complainant claims cannot be for a way built by the defendant, seventeen feet high at Southard street, sloping down to the natural level of the ground some distance back, but a right to traverse a way on that level over its entire length. As already seen, the way was totally obstructed for all practical purposes, because ingress and egress to and from it to Southard street was extinguished by the presence of the wall, for six years, and for the twelve years thereafter, ending at the time of the filing of the bill, the way was not only obstructed, but appropriated by the defendant by his embankment and crematory. Therefore, the obstruction, amounting to an extinction, of the way, has continued for seventeen years and upwards. In this obstruction and extinction the complainant's predecessors in title, and the complainant herself, have acquiesced. She cannot now be heard to say that the defendant's possession has not become an indefeasible right.

The complainant's bill must be dismissed, with costs.