## GRAND TRUNK WESTERN R. CO. v. CITY OF FLINT.

### No. 390.

District Court, E. D. Michigan, N. D.
Jan. 18, 1932.

Frederic T. Harward and H. V. Spike, both of Detroit, Mich., and Gilbert W. Hand, of Bay City, Mich., for plaintiff.

Frank G. Millard, of Flint, Mich., for defendant.

TUTTLE, District Judge.

This is a suit brought by the Grand Trunk Western Railroad Company, as plaintiff, against the city of Flint, a Michigan municipal corporation, as defendant, to enjoin the taking, without compensation to the plaintiff, by the defendant, of certain land alleged by·the plaintiff to belong to it, for the purpose of constructing a public highway crossing over the tracks of the plaintiff railroad company, on the ground that such taking would deprive it of its property without due process of law in contravention of the Fourteenth Amendment to the United States Constitution. The cause has been heard on bill and answer and on proofs taken in open court, all of which, as well as the several briefs submitted by counsel for the parties, have received the careful consideration of the court. The ultimate question presented is whether, as claimed by the plaintiff, the land involved belongs to the plain-

tiff, free from any easement therein on the part of the public, or whether, as contended by the defendant, such land is now subject to such an easement for highway purposes that the plaintiff cannot complain of such taking without compensation to it.

The material facts, as found by the court from the evidence, may be stated, sufficiently for the purposes of this opinion, as follows:

For many years prior to the year 1902 the land here in dispute formed a part of Harrison street, which, by dedication by the original owners of such land followed by public user thereof, had become, and in that year still was, a public highway in said city of Flint, which crossed the aforesaid railroad tracks of the plaintiff at a point adjacent to this disputed tract of land. In the year 1902, certain negotiations between the plaintiff and the common council of the defendant city were had relative to a proposed vacation of Harrison street at this point, in order that the plaintiff, which then and ever since that time has owned the land adjoining said street on both sides, might there occupy the area so sought to be vacated as a site for a new passenger depot and platform. On July 29, 1902, the plaintiff submitted to the said council the following petition:

"To enable us to properly locate the proposed new depot and grounds, to lay walks and build platforms for the accommodation of passengers in boarding and alighting from our trains, we find it will be necessary to build a stone platform across Harrison Street, and for this reason would petition your Honorable Body, to vacate Harrison Street from the south line of the right of way of the Grand Trunk Western Railway to the South line of Mill Street or Water Street."

The record of the proceedings of the council shows that, on receipt of the aforesaid petition, "on motion, the city attorney was ordered to prepare the necessary papers to vacate the above street." Such record also shows that at a meeting of the said council on August 4, 1902, two resolutions relative to such proposed vacation were adopted. The first was as follows:

"Resolved that the council will take the necessary steps with all due dispatch to complete the vacating of the foot of Harrison Street, upon condition that said company build a dock on the river above the dam and maintain the same with a stone walk from thence to the depot, also a wire fence between said walk and the tracks of said company from the dock to the depot platform."

The other such resolution provided as follows:

"Whereas, upon petition of the Grand Trunk Western Railway, it has been requested to vacate that portion of Harrison Street in the city of Flint between the south line of the right-of-way of said road North to the South line of Water Street in the second ward, City of Flint, Michigan, and

"Whereas, as that portion of said Harrison Street is a dangerous public crossing on account of the numerous tracks of said railway crossing it at that point,

"Resolved, that the said portion of Harrison Street be vacated as a public street.

"And Further, that written notices be posted in three public places in the city of Flint for three weeks preceding the 15th day of September, 1902, at which time a meeting of the Common Council shall be held in the Common Council Chamber in the city of Flint for the purpose of treating with any person or persons liable to be affected by the vacation of said street, and for the purpose of hearing all persons in opposition thereto."

The record of the council meeting of September 15, 1902, shows that "on motion, the hearing in the matter of the closing Harrison Street was adjourned for two weeks." It does not appear that any further proceedings or actions were taken by the defendant city relative to the vacation of this street. Nor does it appear that the plaintiff ever fully completed the construction of the dock, walk, and fence to which one of the resolutions just quoted referred. It is, however, undisputed that the plaintiff proceeded, without objection by the defendant, or, so far as appears, by any one, to build its new depot as contemplated, with an appurtenant cement platform projecting about a foot above the ground, which depot and platform extended entirely across Harrison street and fully occupied and obstructed the portion thereof here involved, effectually preventing the use of such street for highway purposes, at least by vehicular traffic. This occupation and obstruction continued, without objection by the defendant, until the year 1928, when the plaintiff removed the said depot and platform, and since that time the land in question has ap-

parently not been occupied or obstructed. In 1930, the defendant city determined to construct the railroad crossing already mentioned and to use, for that purpose, the land here in controversy. Thereupon the plaintiff instituted this suit.

The plaintiff contends: (1) That the aforesaid official proceedings of the defendant city, or at least the last of the resolutions just quoted, amounted to a formal, legal vacation of this street, with resultant reversion of the title thereto to the plaintiff as the adjoining landowner; and (2) that in any event such proceedings, followed by the actual occupancy and use of such street by the plaintiff without objection by the defendant, constituted an abandonment thereof as a public highway, with the same reversion of title to the plaintiff.

■ 1. I am unable to agree with the contention of the plaintiff railroad company that it has sustained the burden, resting on it as the plaintiff here, of showing a legal vacation of this street. It will be noted that one of the official resolutions in question provided merely that the council "will take" the necessary steps for such vacation "upon condition that" the plaintiff build and maintain the dock structures therein mentioned, which condition is not satisfactorily shown to have been performed. Moreover, that resolution was apparently superseded and supplemented by the subsequently recorded resolution hereinbefore last quoted. That resolution, concluding as it did with a provision for the posting of public notices of a meeting of said council "for the purpose of treating with any person or persons liable to be affected by the vacation of said street, and for the purpose of hearing all persons in opposition thereto," must, in my opinion, be construed not as intended to take immediate effect as an absolute vacation of the street involved, but only as a preliminary step in a proposed possible vacation of such street. To construe it otherwise would be to render its provisions for notices and a subsequent meeting meaningless. As, therefore, there is no showing that any such subsequent meeting was ever held, or that any further action was ever taken to complete and make effective the vacation proceedings thus commenced, the resolutions in question cannot be held to have constituted a legal vacation of this highway, and no other actions or proceedings are claimed by the plaintiff to have had that effect.

2. It is further urged by the plaintiff that, aside from any question of formal vacation, the conduct of the defendant in consenting to the construction of the depot structures already mentioned on and over this street and their occupancy and obstruction of such street so as to prevent its use as a public highway, considered in connection with the council proceedings just mentioned, constituted an abandonment by it of such street. After careful consideration, I cannot avoid the conclusion that this contention is well founded and must be sustained.

■ It is settled law in Michigan, which of course this court will follow in determining questions involving local rules of property, that, when land has been dedicated to the public for a street or highway, the owners of the land abutting thereon own the fee to the center of such street or highway, subject only to an easement in the public for highway purposes, and that upon a vacation or abandonment thereof by the public such fee of the abutting owners becomes free from such easement, which is thereby extinguished and terminated. Smeberg v. Cunningham, 96 Mich. 378, 56 N. W. 73, 35 Am. St. Rep. 613; In re Albers' Petition, 113 Mich. 640, 71 N. W. 1110; Scudder v. Detroit, 117 Mich. 77, 75 N. W. 286; Graham v. Detroit, 174 Mich. 538, 140 N. W. 949, 44 L. R. A. (N. S.) 836; United States Gypsum Co. v. Christenson, 226 Mich. 347, 197 N. W. 497.

■ It is an equally well-settled rule of law in Michigan, likewise to be followed by this court in this case, that, aside from any question of formal vacation by the public authorities, where the public ceases to use a street or highway which has been dedicated to it for such use, under circumstances indicating an intention to abandon it as a public thoroughfare, such conduct constitutes an abandonment thereof, with the same effect as if it had been formally vacated, with resultant reversion of an unincumbered title to the abutting property owners. Lyle v. Lesia, 64 Mich. 16, 31 N. W. 23; Goodman v. Brenner, 219 Mich. 55, 188 N. W. 377; Meyer v. Meldrum, 237 Mich. 318, 211 N. W. 658. As was said by the court in Goodman v. Brenner, supra, 219 Mich. 55, at page 60, 188 N. W. 377, 379:

"Abandonment is largely a matter of intention. It consists of intention and nonuser. There must be coupled with the nonuser some clear and decisive act of the dominant owner, showing an intention to abandon and release his right."

Applying these rules to the present case, it appears from the record, and is apparently conceded by the defendant, that the land so in dispute became a public highway by dedication thereof for highway purposes, followed by acceptance by user on the part of the public. It is also undisputed that the plaintiff owns the land abutting on both sides of what was, prior to 1902, this public street. I am satisfied by the evidence, and I find that when, in 1902, under the circumstances already mentioned, the public and its officials, in response to the request of the plaintiff that this street be closed in order that the proposed depot and stone platform might be built "across Harrison Street," permitted such depot and platform, which must have been then supposed by all concerned to be permanent structures, to be so built and to completely, and apparently permanently, occupy and obstruct such street and prevent its use as a highway, such conduct sufficiently indicates an intention to abandon this street, and, followed as it was by actual nonuser as a highway, constituted an abandonment of such highway. As a result of such abandonment, the easement of the public in such street terminated, and the fee title thereto, which already belonged to the plaintiff as the sole abutting landowner, became entirely freed from such easement.

In view of the conclusions thus reached, there is no occasion to determine whether, as contended by the defendant, the absence of a specific showing that the resolutions claimed to constitute a vacation were adopted by a two-thirds vote, as required by the charter of the defendant city, in itself invalidates such claimed vacation; or whether, as suggested by the plaintiff, the failure of the defendant to obtain the permission of the Michigan public utilities commission, with respect to the proposed railroad crossing for which the land in controversy is sought, prevents the construction of such crossing, as the plaintiff is not concerned with, nor affected by, the particular purpose for which the defendant desires or intends to use this public highway unless and until such use hereafter entitled the plaintiff to complain of some deprivation of its rights not here shown.

For the reasons stated, I conclude that the plaintiff is entitled to the injunctive relief sought in its bill of complaint herein. A decree will be entered accordingly, in conformity with the terms of this opinion.