CITY OF KENTWOOD v SOMMERDYKE ESTATE

Docket No. 109646. Argued March 3, 1998 (Calendar No. 7). Decided
    July 31, 1998.

The city of Kentwood brought a condemnation action in the Kent Cir-
    cuit Court, to widen and improve 52nd Street, claiming that the
    entire area within thirty-three feet of the centerline of 52nd Street
    had become a highway by user. The property owners conceded that
    the ten-foot wide asphalt street and an additional six-foot wide
    shoulder and ditch had become a highway by user, but disputed
    the land between sixteen and thirty-three feet from the centerline.
    The court, H. David Soet, J., held that a highway created in accor-
    dance with the highway-by-user statute, MCL 221.20; MSA 9.21,
    applied only to the extent of actual use, finding in favor of the
    property owners and awarding just compensation. The Supreme
    Court granted the city leave to appeal before decision by the Court
    of Appeals. 456 Mich 869 (1997).

In an opinion by Justice CAVANAGH, joined by Chief Justice
    MALLETT, and Justices BOYLE and KELLY, the Supreme Court held:

The state may condition the retention of certain property rights
    on the performance of an affirmative action within a reasonable
    statutory period. The highway-by-user statute is constitutional and
    does not create a taking of property without just compensation.

1. The highway-by-user statute provides that a property interest
    in unused property is of less than absolute duration and that reten-
    tion of such an interest is conditioned on the performance of cer-
    tain actions within a ten-year period. The statute does not treat
    such property as abandoned, but as impliedly dedicated to the state
    for public use if the property owner fails to rebut the presumption
    of dedication within the ten-year period of limitation. The require-
    ment is neither unreasonable nor arbitrary.

2. Where there is evidence that a presumption of dedication has
    been rebutted within the statutory period, privately owned land
    cannot become a public road merely because the statute presumes
    the road to be four-rods wide. A public road is only as wide as
    actual use where the plaintiff presents evidence that the presump-
    tion of dedication has been rebutted within the statutory period of
    repose. If the presumption is not rebutted within the statutory

period, the road is deemed dedicated to the full extent of the four-rod width. The Taking Clauses of the United States and Michigan Constitutions are not implicated. After dedication, the former owner retains no interest for which compensation may be claimed. It is the owner's failure to make any use of the property and not the action of the state that causes the lapse of the property right. There is no taking that requires compensation.

3. The property at issue became property of the state when the road was created by use. It was deemed dedicated to the state because there was no contrary action taken within the statutory period. No evidence was presented that the original property owners rebutted the presumption of dedication within the period of limitation. Because the property in question was never owned by the defendants, they cannot claim a right to it.

Reversed.

Justice TAYLOR, concurring in part and dissenting in part, stated that the highway-by-user statute is a legislative modification of the common law of prescriptive easement that vests the right to use such roads in the public at large. Because the state has only obtained an easement, the landowner retains a fee simple interest in the property. The landowner's acquiescence in the use of a portion of the land as a highway, precludes any finding of a taking. The enactment and publication of the highway-by-user statute is sufficient to put a landowner on notice that acquiescence in the creation of a highway by user across the land will create a right of way four rods in width, even if less is actually used. Because *Eager v State Hwy Comm'r*, 376 Mich 148 (1965), was wrongly decided, prospectively, from the date of this opinion, it should be overruled.

Justice WEAVER, joined by Justice BRICKLEY, dissenting, stated that the majority's interpretation of the highway-by-user statute is unconstitutional because it amounts to a seizure of property without just compensation or actual use. The highway-by-user statute is constitutional only when interpreted to afford the public a highway as wide as has been actually used.

The highway-by-user statute should be read as limiting the presumption of width to the extent actually used. Implied dedications involve a fictional offer inferred from the property owner's acquiescence to public use, and the acceptance of the fictional offer by actual use and maintenance of the dedication by the appropriate public authority. Failure by the public to use the full four rods anticipated by the highway-by-user statute simply results in the public's acquiring less than four rods. The majority's assumption that the Legislature can draft a statute that destroys a fee simple interest in real property without compensation or proof of actual

use is no less than a sanctioning of the unconstitutional seizure of private property. However, regardless of the common-law theory being modified by statute, the Legislature is bound by the federal and state constitutions. Although the majority relies on *Bumpus v Miller*, 4 Mich 159 (1856), to support its holding, it ignores a long series of opinions holding that highways established under the highway-by-user statute are not presumptively four-rods wide, but are only as wide as the extent of use.

It is fundamentally contrary to taking jurisprudence to justify the seizure of property by balancing the value of a fee simple interest against its potential value and use to the public. Because the majority's interpretation of the highway-by-user statute exacts a permanent easement from all property owners whose land abuts public highways established by user beyond that actually used, it is unconstitutional. Further, because the majority's interpretation of the highway-by-user statute effects a taking of property, notice must be given beyond what can be attributed to the mere enactment of the statute. The majority's interpretation of the highway-by-user statute ignores reason and fairness. It is fundamentally unfair to take a modern property owner's land because of a predecessor's failure to act, when it would have reasonably been understood by the predecessor, given the decisions of the Supreme Court, that no action was necessary to limit the width of a public highway to the extent actually used.

*Roberts, Betz & Bloss, P.C.* (by *Marshall W. Grate*), for the plaintiff-appellant.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Arthur C. Spalding* and *Molly M. McNamara*) for the defendants-appellees.

Amici Curiae:

*Pratt & Frank, P.C.* (by *Donald C. Frank*), for Kathy S. Barrier and Betty Bergeon.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Patrick F. Isom*, Assistant Attorney General, for Department of Transportation.

*Hackett, Maxwell & Phillips* (by *Dawn L. Phillips-Hertz* and *Lisa Rycus Mikalonis*) for Michigan Press Association.

*Larry A. Salstrom* for Ingham County Board of County Road Commissioners.

*M. Carol Bambery* for Michigan United Conservation Clubs.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael C. Levine* and *Christina T. Henriques*), for County Road Association of Michigan, Michigan Municipal League and Michigan Townships Association.

*Loomis, Ewert, Parsley, Davis & Gotting, P.C.* (by *Harvey J. Messing* and *Gary L. Field*), for Michigan Electric and Gas Association, Michigan Municipal Electric Association, Michigan Electric Cooperative Association, Telecommunications Association of Michigan, Ameritech Michigan, GTE North Incorporated, Detroit Edison Company, Michigan Consolidated Gas Company, and Consumers Energy Company.

*Robert C. Walter*, Assistant Corporation Counsel, for City of Detroit.

*Thomas J. O'Toole* for Muskegon County Road Commission.

CAVANAGH, J. In this case we granted leave to appeal to determine whether a highway created by use under the highway-by-user statute[1] is limited to the area of

---

[1] MCL 221.20; MSA 9.21.

actual public use, or to the statutory four-rod width. If the latter, we then must determine whether the four-rod-wide rebuttable presumption is constitutional under the Michigan and United States Constitutions. In accordance with United States Supreme Court case law, we hold that the state has the authority to condition the retention of certain property rights on the performance of an affirmative act within a reasonable statutory period. To that end, we hold that the highway-by-user statute is constitutional and does not create a "taking" of property without just compensation.

I

The plaintiff, city of Kentwood, and defendants, Fernando Cioni and Charles and Luciana Waddell stipulated the following facts.

The city of Kentwood is a Michigan municipal corporation located in Kent County, Michigan. On May 20, 1994, the city brought a condemnation action pursuant to MCL 213.51 *et seq.*; MSA 8.265(1) *et seq.*, the Uniform Condemnation Procedures Act. The city, by resolution dated March 21, 1994, determined that it was necessary for the health, safety, and welfare of the public to acquire certain property interests for the purpose of widening and improving 52nd Street in the city. On May 20, 1994, the city recorded a declaration of taking with the Kent County Register of Deeds.

One of the parcels affected by the condemnation action is the property purportedly owned by the defendants. The city took from the defendants' parcel a total of 64,610 square feet of land area. The city also acquired an additional thirty-foot wide temporary grading permit.

As of May 20, 1994, 52nd Street was improved on the south side of the centerline with a ten-foot wide asphalt street, together with an additional six-foot wide shoulder and ditch area. The property owners concede that the sixteen-foot area had become a highway by user as of May 20.[2] The city claimed, and the property owners denied, that the entire area within thirty-three feet of the centerline of 52nd Street had become a highway by user as of May 20. The land between sixteen and thirty-three feet from the centerline of 52nd Street is the area in dispute.

The property owners mowed the grass and planted trees within the area in dispute. However, the property owners did not maintain any structure within the disputed area. On October 25, 1979, Michigan Consolidated Gas Company applied for a highway permit from the Kent County Road Commission to lay a two-inch gas line within the area in dispute. The application was approved by the road commission on November 5, 1979. On November 9, 1983, the gas company applied for an additional permit to lay a 1¼ inch gas line along the defendants' property. This application was also approved by the road commission. These gas lines were installed twenty-six feet from the centerline of 52nd Street. On May 20, 1982, Wolverine Paving, Inc., applied for a highway permit to install a residential driveway approach at the defendants' property.

During all relevant times, 52nd Street was under the sole jurisdiction of the city, but the road commis-

---

[2] In the affidavit of Carey Sommerdyke, defendants admit that the original farmhouse was built in 1885 at 3461 52nd Street. Thus, 52nd Street, having existed at least since 1885, has been a highway by user for over one hundred years.

sion acted as the city's agent for permit applications and maintenance purposes. The property owners have not pursued any action against the road commission or Michigan Consolidated Gas Company for trespass or damages relating to the installation of the gas lines.

On August 1, 1995, the city filed a motion for summary disposition, arguing that its highway right of way was presumptively thirty-three feet wide on either side of the centerline of 52nd Street. On August 7, 1995, the property owners filed a cross-motion in limine, asserting that a highway created by the highway-by-user statute is limited to the area of actual use. The trial court so held.

As a result of the trial court's ruling, the parties waived their rights to a jury trial and submitted the case for decision on the stipulated facts. The trial court issued its written opinion on March 20, 1997, holding that a highway created in accordance with the highway-by-user statute applies only to the extent of actual use. Rejecting the city's argument that the underground gas line expanded the width of the highway, the trial court found in favor of the property owners and awarded $26,210 as just compensation for the land taken.

The city appealed to the Court of Appeals and in this Court. This Court granted leave to appeal, bypassing the Court of Appeals, to address this jurisprudentially significant issue.

II

First, we must determine whether the state has the authority to create a statute that conditions the retention of a property right on performance of conditions

that indicate a present intention to retain the property interest. If the state has the authority to do so, we next must determine whether the highway-by-user statute authorizes an unconstitutional "taking" of property without just compensation.

Appellees do not contest the establishment of a highway by use; rather, they contest the extent of the road to which the state is entitled. They claim that the state is entitled only to that portion of the highway actually used by the public. While the statute gives the state the right to assert ownership over the full four-rod width of a road, the appellees contend that to the extent it gives the state the right to property not actually used by the public, the statute creates an unconstitutional "taking" of property under the United States and Michigan Constitutions. Therefore, appellees assert, the state must pay just compensation for the portion of the road the state wishes to widen. We disagree.

Before we address appellees' arguments about the constitutionality of the highway-by-user statute, it is appropriate to consider whether the state has the power to provide that property rights of this character shall be extinguished if their owners do not assert a right to them by performing reasonable conditions within the ten-year period required by the statute. In accordance with case law from the United States Supreme Court, we hold that a state may condition the retention of a property right on performance of an affirmative action within a reasonable statutory period.

The highway-by-user statute, MCL 221.20; MSA 9.21 provides:

All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width [sixty-six feet], and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods [thirty-three feet] in width on each side of such lines.

The first version of the highway-by-user statute was enacted in 1838, the year after Michigan became a state. 1838 RS, tit 6, ch 4, § 42. While the statutory period for retention of the property right has changed over the years, the statute has remained substantially similar to the one enacted as first written.

At oral argument, the appellees asserted that because property is a fundamental right, the state cannot put the burden on the landowner to do an affirmative act in order to retain the property right. This assertion has been rejected by the United States Supreme Court.

In *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972), the United States Supreme Court stated:

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Through our highway-by-user statute, Michigan has declared that appellees' property interest is of less than absolute duration and that retention of that interest is conditioned on the performance of certain actions within the ten-year period. Like the United States Supreme Court,

> [w]e have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest.
>
> From an early time, this Court has recognized that States have the power to permit unused . . . interests in property to revert to another after the passage of time. In *Hawkins v Barney's Lessee* [30 US (5 Pet)] 457; 8 L Ed 190 [(1831)], the Court . . . stated: . . . "What right has any one to complain, when a reasonable time has been given to him, if he has not been vigilant in asserting his rights?" *Id.* at 466. [*Texaco v Short*, 454 US 516, 526; 102 S Ct 781; 70 L Ed 2d 738 (1982).][3]

In the early settlement of this country, a person who received a grant of property and failed within five years to seat and improve it was held to have abandoned it. *Id.* at 527, n 19. Later, the United States Supreme Court upheld a Pennsylvania statute that provided for the extinguishment of a reserved interest in ground rent if the owner failed to collect rent or did not make a demand for rent within twenty-one years. Although the effect of the Pennsylvania statute was to extinguish a fee-simple estate of permanent

---

[3] We note that *Texaco* dealt with the lapse of mineral rights as opposed to the lapse of surface property rights. However, our analysis is the same under either a "surface rights" case or a "subsurface rights" case because mineral rights "are entitled to the same protection as are fee simple titles." *Id.* at 519, n 5 (citations omitted).

duration, the Court held that the statute was valid. *Id.* at 527, citing *Wilson v Iseminger*, 185 US 55; 22 S Ct 573; 46 L Ed 804 (1902). As the *Texaco* Court noted, "[i]n these early cases, the Court often emphasized that the statutory 'extinguishment' properly could be viewed as the withdrawal of a remedy rather than the destruction of a right." *Id.* at 528.

The highway-by-user statute does not treat the property in question as abandoned; however, it does treat the property as impliedly dedicated to the state for public use. While we note that abandonment and dedication are two separate theories under which a person can relinquish a property right, we believe that the analysis is the same under either. The important concept from the *Texaco* decision is that

> [i]n each case, the Court upheld the power of the State to condition the retention of a property right upon the performance of an act within a limited period of time. In each instance, as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to . . . lapse. [*Id.* at 529.]

Now that we have established that our Legislature has the power to condition retention of property rights on certain affirmative actions, we must proceed to the next step, whether the duty imposed is reasonable.

> Even with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties. As long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties.

"[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." [*United States v Locke*, 471 US 84, 104; 105 S Ct 1785; 85 L Ed 2d 64 (1985), citing *Usery v Turner Elkhorn Mining Co*, 428 US 1, 16; 96 S Ct 2882; 49 L Ed 2d 752 (1976) (citations omitted).]

We believe that it is clear that the state has not exercised its power in an arbitrary manner. The statute provides that all roads created by use shall become a public highway of four-rods width if they have been used as a public highway for ten years or more. Our Court has interpreted this statute to establish a dedication of land for public use. A common-law dedication is an intention on the part of the owner to dedicate the land for public use, which is accepted by the public. *Choals v Plummer*, 353 Mich 64, 70; 90 NW2d 851 (1958).

Highways by user are based on an implied dedication by the landowner. *Kruger v Le Blanc*, 70 Mich 76; 37 NW 880 (1888). Under the highway-by-user statute, a particular period, in this case ten years, creates a presumption of dedication to the public. One similarity between a common-law dedication and a dedication by user is that a presumption of dedication can be rebutted by evidence showing that the property owner intended to give the public less than the full width of the road. However, under common law, this determination was often difficult to make because there was no prescribed time frame in which to measure the extent of the dedication.

Although our courts have made a distinction between common-law and dedication implied by statute, we have not clearly explained the technical dis-

tinction. A clear distinction has been articulated by English case law:

> At common law there is no fixed minimum period which must be proved in order to justify an inference of dedication and no fixed maximum period which compels such an inference. It all depends on the facts of the case. Prima facie the more intensive and open the user and the more compelling the evidence of knowledge and acquiescence, the shorter the period that will be necessary to raise the inference of dedication at common law.

> \* \* \*

> The common law required not only that the claimant to the right should show that the landowner had evinced an intention to dedicate, he had to show actual dedication; and it was precisely because such an event was usually fictitious or imaginary that the common law was unsatisfactory. [*Nicholson v Secretary of State for the Environment*, unreported QB Div'l Ct opinion, issued March 22, 1996 (CO/2205/95).]

In Michigan, the highway-by-user statute modified the common law. Statutes like this eliminated the need to prove a fictional event. Michigan's statute refines this concept by holding that a dedication is established during the ten-year period of limitation. It is during that ten-year period that a property owner can present evidence that rebuts the existence and extent of a public highway. The statute creates consistency in the theory of implied dedication through a prescribed period as well as a specific width of four rods. This statutory presumption allows for the dedication of the entire four-rod width unless the evidence rebuts the presumption.

In the past, our case law has determined what evidence is sufficient to rebut the existence and extent

of a public highway. In *Ellsworth v Grand Rapids*, 27
Mich 249 (1873), our Court stated:

> The statute, in all such cases, is a fair notice to the owner
> that if he means to dispute the rightfulness of the public
> user, he must assert his right within the prescribed period
> *in some way calculated to interfere with, disturb or inter-
> rupt such use by the public, or by the institution of a suit
> for the judicial determination of the right.* [*Id.* at 256
> (emphasis added).][4]

We feel the statutory period of ten years provides
ample opportunity for a property owner to rebut the
presumption. Furthermore, we find reasonable the
requirement that a property owner must assert the
right within the prescribed period in a manner calcu-
lated to interfere with, disturb, or interrupt the use by
the public, or by instituting an action in court. We do
not find the requirements necessary to rebut the pre-
sumption to be arbitrary. "The State surely has the
power to condition the ownership of property on
compliance with conditions that impose such a slight
burden on the owner while providing such clear bene-
fits to the State." *Texaco*, 454 US 529-530.[5]

Therefore, like the Court in *Texaco*, we conclude
that the state may condition the permanent retention
of a property right on performance of reasonable con-

---

[4] Because this case does not deal with the issue whether the property
owners actually rebutted the statutory presumption of dedication within
ten years after the highway by use was created, we will not address the
long line of cases that address the conditions that must be established in
order to rebut the presumption.

[5] As noted in *Texaco*, " '[W]here the public interest is involved prefer-
ment of that interest over the property interest of the individual, to the
extent even of its destruction, is one of the distinguishing characteristics
of every exercise of the police power which affects property.' " *Id.* at 530,
n 23, quoting *Miller v Schoene*, 276 US 272, 279-280; 48 S Ct 246; 72 L Ed
568 (1928).

ditions that indicate a present intention to retain the property interest. We find that, by treating property that has not been reserved for private use for ten years or longer as dedicated to the public for use as a highway, the Michigan statute is a reasonable exercise of police power.

III

We now examine the substantive effect of the highway-by-user statute to determine whether the Legislature nonetheless is barred from enacting it because it works an impermissible intrusion on constitutionally protected rights. Appellee contends that the highway-by-user statute takes private property without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

The Fifth Amendment provides in part: "[N]or shall private property be taken for public use, without just compensation." The Fourteenth Amendment provides in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The Fifth Amendment prohibition applies against the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc v Beckwith*, 449 US 155, 160; 101 S Ct 446; 66 L Ed 2d 358 (1980). Michigan's Constitution is substantially similar to the Taking Clause of the United States Constitution. *Van Slooten*

*v Larsen*, 410 Mich 21, 41; 299 NW2d 704 (1980). It
provides:

> Private property shall not be taken for public use without
> just compensation therefor being first made or secured in a
> manner prescribed by law. Compensation shall be deter-
> mined in proceedings in a court of record. [Const 1963, art
> 10, § 2.]

As early as 1856, this Court addressed the constitu-
tional issues raised by the application of the highway-
by-user statute. Specifically, we rejected the same
argument appellees currently make. In *Bumpus v
Miller*, 4 Mich 159 (1856), the plaintiff asserted that
his property could not be taken for public purposes,
except the necessity for using it. This Court rejected
the plaintiff's arguments stating that

> the constitution, however, in no way or manner touches or
> affects the case now under consideration. It applies to
> cases where private property is taken for public use with-
> out the consent of the owner, and does not apply to cases
> where the owner actually gives or dedicates his property to
> the public for their use, or where, from his long acquies-
> cence in the use of it by the public, a donation or dedica-
> tion is presumed by law, as in the case before us. The plain-
> tiff, or those under whom he claims, has suffered the public
> to use the road as a highway without objection, for more
> than twenty years. From this fact, the law presumes a dona-
> tion of it to the public, or a dedication of it to the public
> use. [*Id.* at 163-164.]

See also *Fuller v Grand Rapids*, 105 Mich 529; 63 NW
530 (1895). We now reaffirm our prior holding. The
statute itself creates the basis for the implication that,
under the circumstances defined in the statute, the

owner implied a dedication of property four rods in width for use as a public road.

The dissent claims that this interpretation of *Bumpus* was "expressly found unconstitutional" by subsequent decisions of this Court including *Eager v State Hwy Comm'r*, 376 Mich 148; 136 NW2d 16 (1965), and *Smith v State Hwy Comm'r*, 227 Mich 280, 283-286; 198 NW 936 (1924). *Post* at 677. However, a close reading of these cases shows that *Bumpus* has not been held unconstitutional. In *Eager*, the land in dispute was land that had been continuously used and maintained by the property owner for more than fifty years, first as a private parking lot for a hotel, and later as a location for gasoline pumps for a gas station. The defendants and their predecessors in title testified that the disputed strip of land had been used as a private parking place and a means of ingress and egress from their places of business, and it was used exclusively by the defendants and their predecessors in title. *Id.* at 152. *Eager* properly held that the statutory presumption did not apply to the facts of that case. Moreover, the Court recognized and upheld the statutory presumption stating that if a property owner "means to dispute the rightfulness of the public user, he must assert his right within the statutory period by physical action or suit." *Id.* at 154, citing *Ellsworth v Grand Rapids, supra.*

We recognize that after establishing that the presumption of dedication had been rebutted, the Court in *Eager* made the assertion that "privately owned land cannot become public road by user beyond the portion used as such merely by the . . . statutory pronouncement to that effect." *Id.* We believe that this sentence, when read in the context of the whole

opinion, supports our proposition that *where there is
evidence that the presumption has been rebutted
within the statutory period,* privately owned land
cannot become a public road merely because the stat-
ute presumes the road to be four-rods wide. To the
extent that the dissent claims this statement supports
the proposition that a public road is *always* only as
wide as actual use, we disagree. If we read *Eager* to
support the proposition of the dissent, the Court's
alleged pronouncement that a public road is *always*
only as wide as actual use would be dicta because, as
noted previously, the presumption was effectively
rebutted in that case. To be sure, we now clarify our
holding in *Eager*, and limit it to cases where the pre-
sumption has been rebutted.[6] The public road is only
as wide as actual use where the plaintiff presents evi-
dence that the presumption of dedication has been
rebutted within the statutory period of repose. If the
presumption is not rebutted within the statutory

---

[6] In a 1986 decision, this Court in *Eyde Bros Development Co v Eaton
Co Drain Comm'r*, 427 Mich 271; 398 NW2d 297 (1986), reaffirmed our
holding in *Bumpus*. We also stated that "the width of the easement is not
confined to the paved surface . . . but includes the entire four rods or
sixty-six feet." We continued:

> To rebut the presumption of four rods width, a fee owner must
> prove that the width of the easement was "expressly or impliedly
> restricted." *Bumpus, supra* at 164. Cases in which the statutory
> presumption has been rebutted effectively include those in which
> the abutting property owner has continuously maintained some
> structure or activity tending to give notice of possession or control
> of the disputed property. See *Eager v State Hwy Comm'r*, 376 Mich
> 148; 136 NW2d 16 (1965) (private parking place); *Coleman v Flint
> & Pere Marquette R Co*, 64 Mich 160; 31 NW 47 (1887) (fence and
> cultivated land); *Scheimer v Price*, 65 Mich 638; 32 NW 873 (1887)
> (fence). . . . [*Id.* at 298-299.]

Therefore, we believe our interpretation of *Eager* is consistent with
*Eyde Bros,* and the result in this case should not be prospective only.

period, the road is deemed dedicated to the full extent of the four-rod width.

Indeed, none of the cases cited in *Eager* or the dissent negate the statutory presumption of sixty-six feet. For example, *Smith, supra,* cited in *Eager,* recognized the statutory presumption of sixty-six feet when it stated:

> But if we . . . accept all that is claimed for *Bumpus v Miller, supra,* and *Kruger v LeBlanc, supra,* and hold that an offer to dedicate presumes a four-rod strip, still the presumption is a rebuttable one, and all the facts and circumstances in the instant case rebut it. [*Smith,* 227 Mich 287.]

Thus, contrary to the claims of the dissent, *Bumpus* has never been "expressly found unconstitutional" by this Court. Indeed, we agree with our prior decisions in *Eager* and *Smith,* that where there is evidence that the presumption was rebutted within the statutory period, or where there is no road created by use over a person's property affording him the opportunity to rebut the presumption, it would be unconstitutional to "take" his property without due compensation.

The dissent also claims that we "render[] meaningless" MCL 221.22; MSA 9.23 (establishing that public highways may be discontinued), as well as *Lyle v Lesia,* 64 Mich 16; 31 NW 23 (1887), and *Gregory v Knight,* 50 Mich 61, 64; 14 NW 700 (1883). *Post* at 686. However, the dissent is incorrect. It claims that "a portion" of the highway dedicated to the public should be deemed discontinued under MCL 221.22; MSA 9.23, which reads in full:

> Every public highway already laid out, or hereafter to be laid out, *no part* of which shall have been opened and

worked within 4 years after the time of its being so laid out,
shall cease to be a road for any purpose whatever. [Empha-
sis added.]

Therefore, the statute expressly negates the dissent's
proposition that nonuse of a portion of the dedicated
land means that the unused portion is "discontinued"
and somehow escheats back to the original property
owner. In fact, by implication, it supports the conclu-
sion that unless the highway is abandoned in its
entirety, the dedicated land remains owned by the
public to the full extent of the four-rod width.

Furthermore, the dissent is incorrect in asserting
that *Lyle* and *Gregory* require a different result. In
*Lyle*, an *old* road was abandoned in favor of the crea-
tion of a *new* road. There was *no* travel over the old
road for over twelve years, and six years after the
new road was created, the property owner erected a
fence where the old road had been. The Court held
that the state could not reopen the old road that had
been abandoned by the public for over twelve years
in favor of the new road.

In *Gregory*, the Court held that the road was "par-
tially discontinued" because the adjacent property
owner had placed a "rail fence, stone row, rail pipes,
hay barn and sheds" on the portion of the highway
the highway commissioner sought to clear. *Gregory*,
50 Mich 62. The Court held that because a highway
may be wholly discontinued by user, it may also be
partially discontinued. However, the significant factor
in determining whether a portion of the highway had
been partially discontinued was that the property
owner had effectively rebutted the presumption of
dedication by erecting the fence, barn, and sheds on
the property in question. *Id.* at 64.

Appellees acknowledge *Bumpus* and the above-cited case law; however, they assert that our decisions have incorrectly held that the statute does not affect the Taking Clause of the constitution. In support of their position, the appellees cite *Nollan v California Coastal Comm*, 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987), for the proposition that the statute authorizes an unconstitutional taking of property without just compensation. We disagree with appellees' contention that *Nollan* requires a contrary result. *Nollan* states in relevant part:

> Had California simply required the Nollans to make an easement across their beachfront available to the public on a permanent basis in order to increase public access to the beach . . . we have no doubt there would have been a taking.

> \*   \*   \*

> We have repeatedly held that, *as to property reserved by its owner for private use,* "the right to exclude [others is] 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.' " [*Id.* at 831 (citations omitted, emphasis added).]

The one notable difference between *Nollan* and this case is that Michigan has not *required* the original property owners to give the property to the state. Instead, the Michigan statute allows the landowner to assert the right to the property within ten years after the creation of the road as a public road by use. If ten years pass without a continuous assertion of right by the property owners, the law presumes that the owner intended to dedicate the entire four-rod width of the road. It is only after the property owners have failed to act to preserve their right to the property

that the property is deemed dedicated to the state. Indeed, *Nollan* supports this. Where the "property [is] reserved by its owner for private use" the state may not take the property without just compensation. However, in this case, the property owner did not reserve the property for private use because the property owner, after reasonable notice, did not properly assert his right to the property within the ten-year period.[7] Therefore, the Taking Clauses of the United States and Michigan Constitutions are not implicated. This is so because, after dedication, "the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Texaco*, 454 US 530.[8]

---

[7] One of the concerns raised at oral argument is that there is no ascertainable date regarding when the period runs. To the extent that the determination is placed on the current property owners, we agree. Now, over one hundred years after the highway was originally created, we agree that it would be difficult to determine the date the highway was created. See affidavit of Carey Sommerdyke establishing that the original farmhouse on the property in question was built in 1885 at 3461 52nd Street. However, it is not the current property owners who must ascertain the date the highway was created, because defendants concede the road in question was created more than ten years before appellees acquired the property. It is the person who owned the property when the highway was originally created by use who must assert his right to the property within the statutory period. We believe that a property owner will know when a road is created across his property to a relative degree of certainty. If he does nothing within the statutory period, the statute presumes that he has dedicated the entire four-rod width to the public. We find that the original property owner would be able, with reasonable certainty, to ascertain the date the road was created by use and, thus, would know when the ten-year period began to run.

[8] We reject appellees' argument that *Texaco* is distinguishable because the property lapsed to the successor owner, whereas in this case the property lapses to the state. This is a distinction without a difference. The crucial inquiry is whether the state has the authority at all to condition

Indeed, this premise shows the fundamental flaw in the dissent's analysis. The dissent claims that the original and subsequent property owners retain a fee simple interest in the land because a portion of the dedicated land was unused. However, as noted previously, once a dedication has occurred and there is no evidence that the presumption of dedication has been rebutted, the original property owners no longer own the land dedicated to the public. Therefore, it is incorrect to claim that they retain a fee simple interest in the land. Where the property owner retains no interest in the land, it would be impossible for there to be a "taking." See, e.g., *Cincinnati v White*, 31 US (6 Pet) 431, 440; 8 L Ed 452 (1832) (the original and subsequent property owners, after dedication, have no interest in the dedicated land but the "mere naked fee").

IV

The appellees also contend that the statutory presumption does not provide due process of law. However, this argument was also rejected by the *Texaco* Court. There, the Court stated that, generally, a legislature need only enact and publish a law and afford citizens a reasonable opportunity to familiarize themselves with the terms of a statute to advise its citizens of the lapse of a property right. *Id.* at 530. "[N]o specific notice need be given to an impending lapse." *Id.* at 533. In the instant case, the state of Michigan has enacted a rule of law uniformly affecting all citizens that establishes that a property interest will lapse

the retention of a property right on certain affirmative acts. Once it is established that the state has this authority, it does not matter to whom the property lapses.

through the inaction of its owner. In this case, the law was enacted in 1838. Therefore, the current property owners, if they are to complain at all, must complain to the original property owners who dedicated their land for public use.

To the extent that the current property owners claim a right to the disputed property, we note that the property in question was never owned by them. They present no evidence that the original property owners rebutted the presumption of dedication within the statutory ten-year period. Their only evidence rebutting the presumption dates from 1955 to the present. However, the original farmhouse was built at 3461 52nd Street in 1885.[9] Therefore, the property became property of the state when the road was created by use, and it was deemed dedicated to the state to the full extent of the four-rod width because there was no contrary action taken within the statutory period.[10]

---

[9] The dissent argues that the burden of rebuttal is unreasonable because of ambiguities in the statute, the period for rebuttal, and the passage of over 150 years since the road was created. However, the cases on which the dissent relies to assert the unconstitutionality of the statute all dealt with defendants who were able to present evidence that would rebut the presumption or make a reasonable argument to rebut the presumption, thus proving that the burden is not so unreasonable that it was unworkable in the past. Indeed, it would be difficult to argue that affording a property owner *ten years* to assert his right is somehow "unreasonable." Regardless, there is simply no evidence in this case of rebuttal that dates further back than 1955.

[10] The dissent also claims that the statute impermissibly places the burden of proving that predecessors in title acted within the statutory period in order to rebut the dedication. However, this argument, too, must fail. At common law, the legal burden of proving dedication by user rests on the user. However, where dedication is presumed, as is the case where a dedication is implied by statute, the burden shifts to the property owner to rebut the presumption of dedication during the statutory period. *Nicholson, supra.* If the property owner fails to rebut the presumption, the road is deemed dedicated to the full extent of the four-rod width. Because

Finally, it is ironic that the dissent so vigorously challenges our interpretation of the highway-by-user statute where it has previously supported the position of the majority by signing a unanimous Court of Appeals opinion. In *Kent Co Rd Comm v Hunting*, 170 Mich App 222; 428 NW2d 353 (1988), a unanimous Court of Appeals panel, including Justice WEAVER, stated:

> The elements of a highway by user have been expanded to require evidence of a defined line of travel with definite boundaries, used and worked upon by public authorities, traveled upon by the public for ten consecutive years without interruption, in an open, notorious and exclusive manner. . . . If the elements are established, the statute operates to raise the rebuttable presumption that the road is four rods, or sixty-six feet wide. *Eyde Bros Development Co v Eaton Co Drain Comm'r*, 427 Mich 271, 298-299; 398 NW2d 297 (1986), reh den 428 Mich 1206 (1987).
>
> However, this presumption may be rebutted if the landowner offers any evidence, such as the existence of a structure within the four-rod statutory width, or any other evidence, that the owner retained control of an area within the statutory width. . . . Once the presumption is rebutted, the highway cannot be wider than the zone of actual use which meets the highway by user test outlined above. *Eager*, *supra*, pp 154-155.

*    *    *

> In our case, the property owners along [the highway created by use] must establish that they, or their predecessors in interest, took sufficient action during the running of the statutory ten-year period to give notice of their intention to

---

the burden is placed on the original property owner to rebut the presumption, the burden would remain with subsequent property owners to provide evidence that the presumption was rebutted. It would be illogical to shift the burden back to the government once the public is deemed to be the legal owner of the property.

maintain possession and control over the disputed area. [*Id.* at 231-232.]

We find that the challenges made by the dissent in this case were effectively rebutted by the Court of Appeals decision. Furthermore, this interpretation squares directly with our majority opinion.

For these reasons, we reverse the decision of the circuit court.

MALLETT, C.J., and BOYLE and KELLY, JJ., concurred with CAVANAGH, J.

TAYLOR, J. (*concurring in part and dissenting in part*). I agree with the majority that a highway created by user pursuant to MCL 221.20; MSA 9.21 is presumptively four-rods (sixty-six feet) wide. However, I disagree with the majority's analysis of the issue in terms of implied dedication. I believe the more apt analysis recognizes that the highway-by-user statute is simply a legislative modification of the common law of prescriptive easement. However, I also disagree with the majority's treatment of *Eager v State Hwy Comm'r*, 376 Mich 148; 136 NW2d 16 (1965). I do not think that *Eager* can be harmonized with today's holding. Therefore, I would explicitly overrule *Eager* and, in light of the reliance the people of this state must be able to place in the decisions of this Court, apply my ruling prospectively. Consequently, plaintiffs, who acquired their parcel of land in 1973, should be compensated for the strip of land forming the basis of the instant controversy.

At issue here is a strip of land lying adjacent to an improved road that was created by user. That is to say, the road was never formally dedicated to the public as such, but instead was created when the

public used this portion of land as a road over an
extended period. The city of Kentwood has endeav-
ored to widen the road, and in doing so found it nec-
essary to take a portion of defendants' land for that
purpose. However, in determining the amount of com-
pensation owed defendants because of the taking,
plaintiff has claimed that it need not pay compensa-
tion for any portion of the existing highway and that
its existing right of way is four-rods wide, despite the
fact that the improved portion of the road did not
extend that far onto defendant's land. Defendants, in
turn, argue that they must be compensated for all the
land taken that lies outside the existing improved por-
tion of the road because a highway by user is only as
wide as actually used, not four rods. The trial court
agreed with defendants and ordered that they be
compensated for all land taken that lies outside the
improved portion of the road. This Court granted
leave to appeal, bypassing the Court of Appeals, in
order to address the question presented.

As noted initially, I believe the highway-by-user
statute is simply a legislative modification of the com-
mon law of prescriptive easement. An easement, put
simply, is the right to use the land of someone else.
*Morrill* v *Mackman*, 24 Mich 279, 297 (1872). Our
common law recognizes the creation of easements
through prescription. Prescriptive easements are cre-
ated when a person uses the property of another for a
particular purpose, but does not possess the land.
"Title or rights in lands founded on prescription origi-
nate from the fact of actual, adverse, peaceable, open,
and uninterrupted possession for such length of time
that the law presumes that the true owner, by his
acquiescence, has granted the land, or interest to the

land, so held adversely." *Turner v Hart*, 71 Mich 128, 138; 38 NW 890 (1888). At common law, the party claiming the easement must have used it for fifteen years. *Id.*

With this understanding of the common law of prescriptive easement, I turn to the statute in question. As noted by the majority, the Legislature first addressed highways created by use in 1838 RS, tit 6, ch 4, § 42. Enacted the year after Michigan became a state, it provided that "all roads not recorded, which have been, or shall have been used as public highways twenty years or more, shall be deemed public highways . . . ." Section 43 in turn required that all roads that had been used as public highways for at least twenty years be opened to at least two rods in width.

Before the enactment of this statute, in the early days of our state, many roads were informally established. Under the common law, such use would appear to have created an easement across the land because it was actual, adverse, peaceable, open, and uninterrupted. However, at common law an easement in gross normally flowed to a specific individual and was limited in scope to actual use. In moving forward with the business of governing a new state, the Legislature sought to regularize the system of public highways. Consequently, it determined that such informally created roads should attain a legally recognized status and formally become public highways. Modifying the common law of easement, clearly within the Legislature's prerogative, Const 1963, art 3, § 7; *Placek v Sterling Heights*, 405 Mich 638, 657; 275 NW2d 511 (1979), the Legislature vested the rights to use these roads in the public at large and determined that the

roads must have been used for twenty, rather than fifteen years, before they would attain such status. Additionally, while common-law easements were limited to the scope of actual use, the Legislature determined that public highways would be at least two rods, or thirty-three feet, wide. 1838 RS, tit 6, ch 4, § 43.

In subsequent years the Legislature modified the statutes related to highway by user, changing the period of prescription from twenty years to ten and also expanding the width of the easement created from two rods to four. Nevertheless, the basic statutory scheme remains unchanged. Consequently, § 20, the present incarnation of the highway-by-user statute, provides in part:

> [A]ll roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width . . . .

This Court has recognized that the right of way obtained pursuant to the highway-by-user statute is an easement and that the abutting landowner retains the fee simple interest. *Eyde Bros Development Co v Eaton Co Drain Comm'r*, 427 Mich 271, 282; 398 NW2d 297 (1986); cf. *Grandville v Jenison*, 84 Mich 54, 65; 47 NW 600 (1890); *Wanzer v Blanchard*, 3 Mich 11, 16 (1853). Because the nature of the interest obtained by the public is an easement that was created essentially by prescription, in order to remove

any confusion in the future in this regard, I would clarify the analysis accordingly. Moreover, acknowledging that the state has only obtained an easement answers Justice WEAVER's concern that the highway-by-user statute "destroys a fee simple interest in real property without compensation . . . ." *Post* at 682. This is simply not the case because the fee is retained by the abutting landowner. Only an easement is created by the highway-by-user statute.

My dissenting colleagues conclude that granting the state a right of way that exceeds the amount actually used effects a taking of the abutting landowner's property without just compensation, in violation of US Const, Am V and Const 1963, art 10, § 2. I disagree. First, as just noted, the landowner retains his fee simple interest. Second, because the right of way, as a prescriptive easement, would not have attained status as a highway by user but for the abutting landowner's acquiescence in the use of a portion of his land as a highway, the landowner's acquiescence precludes any finding of a taking. Third, we must acknowledge what I believe to be the controlling effect of the United States Supreme Court's jurisprudence in this area.

My dissenting colleagues assert that the landowner did not acquiesce to anything more than what was actually used, as would be the case if one were addressing a common-law prescriptive easement. However, this view ignores that the highway-by-user statute puts the landowner on notice that if he allows a highway to be created by use, the highway will be the statutory width, absent some action by the landowner to eliminate or limit the use of his land that

operates, over the prescriptive period, to create the highway by user.

My colleagues argue that statutory notice alone cannot be sufficient to apprise the landowner that acquiescence in a road ten feet wide is actually acquiescence in a road four-rods wide. I disagree. As the majority notes, both this Court and the United States Supreme Court have found that the titleholder of mineral rights may lose those rights for failure to specifically claim them, even where the only notice of the need to file the statutory claim is in the statute itself. As noted in *Texaco v Short*, 454 US 516, 532; 102 S Ct 781; 70 L Ed 2d 738 (1982):

> It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.

See also *North Laramie Land Co v Hoffman*, 268 US 276, 283; 45 S Ct 491; 69 L Ed 953 (1925); *Van Slooten v Larsen*, 410 Mich 21, 52-55; 299 NW2d 704 (1980); *Curley v Beryllium Development Corp*, 281 Mich 554, 556; 275 NW 246 (1937) ("It is a maxim of the law that 'ignorance excuses no one' ").[1]

---

[1] The dissenters attempt to read *Texaco* and *Van Slooten, supra*, to say that the statute here at issue, which gives ten years before the abandonment necessary to establish an easement occurs, runs afoul of a constitutional requirement in *Texaco* and *Van Slooten* to the effect that at least twenty years must be given to the affected landowner to act to preserve his interest. This is incorrect, as *Texaco* and *Van Slooten* not only do not establish such a twenty-year floor, but in fact, in finding the statutes constitutional approved a two-year grace period in *Texaco* and a three-year grace period in *Van Slooten* in which owners of interests created before the acts were passed had to record a claim of interest to preserve their mineral rights. *Texaco, supra* at 518-519; *Van Slooten, supra* at 38. The position of the *Van Slooten* majority was that such notice rules are tested not for some arbitrary time requirement, but by a rule of reason. *Van*

That the effectiveness of the statutory notice was sufficient in this case, regarding property interests, is buttressed by the fact that the presumption of knowledge of the law applies equally to the situation in which a person's liberty, rather than property, interests are at stake, i.e., a situation historically subjected to more exacting judicial scrutiny. See *United States v Carolene Products Co*, 304 US 144, 153, n 4; 58 S Ct 778; 82 L Ed 1234 (1938). It is firmly grounded in our law that a person may have his liberty interests taken away, in the form of imprisonment, for violating a statute of which he did not have actual knowledge. "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v United States*, 498 US 192, 199; 111 S Ct 604; 112 L Ed 2d 617 (1991); see also *People v Motor City Hosp & Surgical Supply, Inc*, 227 Mich App 209, 215; 575 NW2d 95 (1997). With this understanding it is clear that the enactment and publication of the highway-by-user statute is sufficient to put landowners on notice that acquiescence in the creation of a highway by user across their land will create a right of way four rods in width even if less is actually used.

Finally, in its discussion of *Nollan v California Coastal Comm*, 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987), the dissent misapprehends that the easement there under discussion was a specific easement over the Nollan's land. The California Coastal Commission had, as described colorfully by Justice Scalia, through an "out-and-out plan of extortion," condi-

---

*Slooten, supra* at 49. Because two and three years were reasonable for the total divestment of an interest, certainly ten years to establish the less draconian circumstance of an abandonment must also be here.

tioned the issuance of a building permit on the Nollan's granting of an easement over their land. *Id.* at 837. Unsurprisingly, this was held to be a taking. Our situation is not analogous, because the highway-by-user statute does not grant a specific easement, or indeed any easement at all, it merely alters the common-law requirements for establishing an abandonment so that an easement may be held to be established. Thus, for example, what was at common law a fifteen-year use requirement was modified by the statute to ten years. This ability of the Legislature to modify the common law of easement is, as I understand the dissenters, not contested. What is contested, however, is the kind and scope of modification the Legislature can make. It is clear that the dissenting justices do not believe that the power to modify the common law can extend to the size of the easement granted. Were this question a matter of first impression, much could be said for their position. This question, however, is not one of uncertainty in our law, because it has been settled by the United States Supreme Court in *Texaco.* In that case, it was held that if notice is given by statute (as it was here) the affected interests in land (a fee interest in minerals in *Texaco*) can be shifted in this fashion. Our case is easier and falls within the *Texaco* rule. After all, rather than shifting a fee interest, the highway-by-user statute only claims a right to travel over the fee, which is, of course, a deprivation less than the total termination of a fee interest such as that seen in *Texaco.* We should follow *Texaco* and find that there was no taking. It is our duty to follow the precedent of the United States Supreme Court on this constitutional matter, no matter what our own predilections, or give

legally recognizable reasons for not doing so. Those reasons have, to my eye, not been presented.

Moreover, we must also recognize this Court's decision in *Eager, supra* at 154, which held:

> We agree with the trial court that privately owned land cannot become public road by user beyond the portion used as such merely by the above noted statutory pronouncement to that effect. To so hold would be violative of Constitution of 1850, art 18, § 14, Constitution 1908, art 13, § 1, which prohibited taking by the public of private property except upon determination of necessity and just compensation "being first made and secured."

In light of this specific holding, the majority's attempt to harmonize *Eager* with today's holding simply is not possible.[2] If we are going to assume that people have read and know the law, one could only conclude that

---

[2] I disagree with the majority's conclusion that the decision in *Eager* was based on the conclusion that the statutory presumption of width had been rebutted within the period of prescription. Close scrutiny reveals that the road at issue in *Eager* was created in 1872. The action (widening of the road) initiating the lawsuit occurred in 1958. *Id.* The opinion discusses testimony going "a half-century back" regarding the uses that had been made of the contested land. Because this evidence did not go back far enough to reach the period of prescription, logically this Court's holding could not have been based on the assumption that the statutory presumption had been rebutted during the period of prescription, which would have ended before the events that were adduced through testimony at trial. Moreover, since 1907, the Legislature has determined that an abutting landowner may not acquire any rights in a public highway through action that would, at common law, have constituted adverse possession. See *Crosby v Greenville*, 183 Mich 452, 459; 150 NW 246 (1914); MCL 247.190; MSA 9.270. Consequently, it must be that the Court's ruling was based on its conclusion that a highway by user is only as wide as actually used. This view of *Eager* is not idiosyncratic as the decisions of other jurisdictions as well as commentaries have understood this to be its holding. See *Barfnecht v Town Bd of Hollywood Twp, Carver Co, Minnesota,* 304 Minn 505; 232 NW2d 420 (1975); *Keidel v Rask,* 304 NW2d 402 (ND, 1981); 76 ALR2d 535; 76 ALR2d Later Case Service, § 4, pp 393-394; 39 Am Jur 2d, Highways, Streets & Bridges, § 52, p 440; 2 Cameron, Michigan Real Property Law (2d ed), Principles & Commentary, § 25.9, p 1162.

after *Eager* was decided everyone should have understood that a highway by user is only as wide as is actually used. Yet, I am convinced that *Eager* was wrongly decided. Consequently, because both my conclusion and the conclusion of the majority overrules this established precedent, we must consider the effect of our decision.

When *Eager* was decided, its effect was to make the portion of the highway-by-user statute that gave more land to the prescriptive user than was actually being used unconstitutional. This holding was retroactive under the doctrine that a statute, or portion of a statute, that is unconstitutional was always, from its inception, "inoperative as though it had never been passed." *Norton v Shelby Co, Tennessee*, 118 US 425, 442; 6 S Ct 1121; 30 L Ed 178 (1886); see also *Briggs v Campbell, Wyant & Cannon Foundry Co*, 379 Mich 160, 165; 150 NW2d 752 (1967). Accordingly, the nonused portion of the four rods was never in any fashion subject to any claim of prescriptive easement. Thus, with respect to the instant dispute, I believe the trial court did not err in ordering that the city of Kentwood must compensate defendants for all land taken from them that lies outside the established use.

However, by revivifying the statute, we today make all land abutting a highway created by user subject to the creation of an easement of the statutorily presumed width. Because today's holding "overrules settled precedent," we should give it prospective application only. *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997). This would mean that the greater amount of land that the statute allows to be used by way of easement could be secured if the prescriptive period of the statute runs from this time for-

ward and the fee holder does not act to manifest lack of acquiescence in such use.

WEAVER, J. I dissent from the majority's interpretation of MCL 221.20; MSA 9.21, the highway-by-user statute. I believe the majority's interpretation sanctions the unconstitutional taking of private property without compensation in violation of the Fifth Amendment of the United States Constitution and art 10, § 2 of the Michigan Constitution. The majority's interpretation also violates appellees' Fourteenth Amendment right to procedural due process.

The majority relies on *Bumpus v Miller*, 4 Mich 159 (1856), to support its holding that the highway-by-user statute authorizes taking more property than has been actually used by the public. However, this interpretation of *Bumpus* was expressly found unconstitutional by subsequent decisions of this Court, including, *Eager v State Hwy Comm'r*, 376 Mich 148; 136 NW2d 16 (1965), and *Smith v State Hwy Comm'r*, 227 Mich 280, 283-286; 198 NW 936 (1924).

Further, the majority incorrectly relies on *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972), and *Texaco v Short*, 454 US 516; 102 S Ct 781; 70 L Ed 2d 738 (1982), to justify placing the burden of preserving a fee simple interest in real property on the property owner. The majority would impose on modern property owners the burden of proving that a predecessor in title, of perhaps 160 years ago, acted within the first 10 consecutive years after the highway was first established, in order to rebut a fictional offer of dedication of four

full rods implied from that predecessor's acquiescence to the public use of less than four rods.[1]

Finally, the decisions of this Court which are subsequent and contrary to *Bumpus*, spanning 1883 to 1965, eliminate the value of any "notice" that can be ascribed to property owners by the mere enactment of the highway-by-user statute.

For all practical purposes, the presumption of an implied dedication of four rods as defined by the majority is irrebuttable and, therefore, unconstitutional because it amounts to nothing less than the seizure of property without just compensation or actual use.

I would affirm the circuit court holding and reaffirm this Court's decisions in *Eager v State Hwy Comm'r*, and *Smith v State Hwy Comm'r*, *supra*, that the highway-by-user statute is constitutional only when interpreted to afford the public a highway as wide as has been actually used.

I

The Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." Const 1963, art 10, § 2  similarly provides:

> Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.

---

[1] Or 20 years, depending upon when the highway was established. As will be discussed below, parts I(C) and II, the time, and indeed the width, prescribed by the highway-by-user statute, has varied since its original enactment.

There has never been any doubt that this prohibition applies to the physical seizure of real property. I believe that the highway-by-user statute should be read as limiting the presumption of width to the extent actually used. The majority's interpretation, which creates a four-rod presumption, effects a physical seizure of property without compensation and is, therefore, unconstitutional.

A

The highway-by-user statute currently provides in pertinent part:

> All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods in width . . . . [MCL 221.20; MSA 9.21.]

This Court has interpreted the highway-by-user statute to create a rebuttable presumption that a property owner abutting a highway established by use impliedly dedicated the land for use as a public highway. See, e.g., *Smith v State Hwy Comm'r* and *Eager*, *supra*. The question in this case regards the width of the highway established by the implied dedication.

Implied dedications are distinguishable from statutory dedications. Statutory dedications require actual written dedication by a recorded plat describing the scope of land dedicated and actual acceptance and

maintenance by the appropriate public authorities.
Implied dedications, on the other hand, require no
actual writing, only a fictional offer implied from the
property owner's acquiescence to public use, and the
acceptance of the fictional offer by actual use and
maintenance of the dedication by the appropriate
public authority.[2] Whether implied or by statute, an
offer to dedicate requires actual acceptance in the
form of use by the public entity with authority over
the road. *Indian Club v Lake Co Rd Comm'r*, 370
Mich 87; 120 NW2d 823 (1963), and *Wayne Co v
Miller*, 31 Mich 447, 448-449 (1875).[3] Acceptance of
implied dedications is garnered from "the facts and
surrounding circumstances." *Smith v State Hwy
Comm'r, supra*, p 286.

Other state courts addressing similar highway-by-
user statutes do so in terms of prescription, requiring
evidence of open, notorious, and uninterrupted use by
the public. Indeed, one Michigan case discusses the

---

[2] The standard method for statutory dedication is by plat under the
Land Division Act, MCL 560.101; MSA 26.430(101). See, e.g., 2 Cameron,
Michigan Real Property Law (2d ed), § 25.13, pp 1166-1167; see also *Kraus
v Dep't of Commerce*, 451 Mich 420; 547 NW2d 870 (1996) (involving statu-
tory dedication by plat). Unlike implied dedications, statutory dedications
do not suffer the uncertainty of proving a fictional offer because "when
[an] owner of property files or records a plat which marks or notes on
plat portions of premises as donated or granted to public; it results in con-
veyance of dedicated portions in fee simple to public." Black's Law Dic-
tionary (6th ed), p 413. Thus, the majority's reference to English case law
for the proposition that the highway-by-user statute "modified" the com-
mon law and "eliminated the need to prove a fictional event" is inappro-
priate. *Ante*, p 654. Far from eliminating the need to prove a fiction, this
Court's interpretation of the highway-by-user statute as being an implied
dedication still effectively requires proof of a fictional offer and an actual
acceptance derived from the surrounding facts and circumstances. *Smith
v State Hwy Comm'r, supra*, p 286.

[3] The obvious import of requiring acceptance is that private property
and the associated costs of maintaining it cannot be forced on a public
authority without its consent.

highway-by-user statute in terms of prescription. See, e.g., *Village of Manchester v Clarkson*, 195 Mich 354, 363; 162 NW 115 (1917). I believe that prescription is the more appropriate theory to apply to the highway-by-user statute because it is the evidence of use adverse to the abutting property owners for a prescribed period that establishes a highway by use. It is only constitutional for the government by statute and without compensation to offer vested property rights for public use if the government demonstrates acceptance through actual use in response to the fictional offer of implied dedication, and then only to the extent actually used. In this respect, implied dedication is the functional equivalent of prescription.

Applying either prescription or implied dedication, it is the evidence of public use and maintenance by public authorities that is determinative of the existence of a public highway. Failure by the public to use the full four rods anticipated by the highway-by-user statute simply results in the public's acquiring less than four rods. Indeed, a highway by user is not "affected by the fact that the land within the highway boundaries may be of a width less than four rods *or more than four rods.*" *Trowbridge v State Hwy Comm'r*, 296 Mich 587, 599; 296 NW 689 (1941) (emphasis added). *Trowbridge* held that the fact that the strip of land between the paved portions of a super highway was wider than four rods would not prevent that strip from becoming a highway by user under the statute because a highway by user is as wide as actually used. *Id.*

B

Contrary to this precedent, however, the majority reads the highway-by-user statute to create a rebuttable presumption that the highway is four-rods wide, regardless of the extent of actual use. The majority's assumption that the Legislature can draft a statute that destroys a fee simple interest in real property without compensation or proof of actual use is no less than a sanctioning of the unconstitutional seizure of private property.

The majority claims that the highway-by-user statute merely modifies common-law dedication by allowing the government to take more than has been actually used. See *ante*, p 654 and n 2 *supra*. However, regardless of the common-law theory being modified by statute, the Legislature is bound by the federal and state constitutions.[4] It is fundamental that a statute cannot offend or amend the constitution. Thus, the majority's interpretation, which would effectively hold that the mere enactment of the highway-by-user statute operates to acquire property beyond that actually used, sanctions the unconstitutional taking of private property for public use without compensation.

The concurrence/dissent similarly suggests that the highway-by-user statute merely modifies the common law of prescription. The concurrence/dissent's argument that the fee is not lost because the highway-by-

---

[4] The concept that the taking of private property for public use without just compensation being paid therefor was included in every document governing Michigan from the ordinance for government of the Northwest Territory of 1787 to the Michigan Constitution of 1963. See, e.g., Gov't of Northwest Territory, art 2; 1805 Gov't of Michigan Territory, § 2; Const 1835, art 1, § 19; Const 1850, art 15, § 9 and art 18, § 14; Const 1908, art 13, § 1 and § 5; Const 1963, art 10, § 2.

user statute takes only an easement, however, is contrary to *Nollan v California Coastal Comm*, 483 US 825, 831-832; 107 S Ct 3141; 97 L Ed 2d 677 (1987), where the Supreme Court recognized:

> Had California simply required the Nollans to make an easement across their beachfront available to the public on a permanent basis in order to increase public access to the beach, rather than conditioning their permit to rebuild their house on their agreeing to do so, we have no doubt there would have been a taking . . . . [W]e [have] observed that where governmental action results in "[a] permanent physical occupation" of the property, by the government itself or by others . . . "our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." . . . We think a "permanent physical occupation" has occurred, for purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises.

Further, in apparent reliance on *Texaco, supra*, the concurrence/dissent appears to argue that there is no difference between modifying the common-law duration of prescription and modifying the scope of prescription. However, the concurrence/dissent fails to understand that the duration of the prescriptive period is an issue of procedural due process, while modifying the scope of property acquired by prescription necessarily implicates the Fifth Amendment's substantive prohibition against the government's seizure of property without just compensation.

1

For its proposition that an abutting owner must rebut his, or his predecessor's, implied dedication of a full four rods, the majority relies on this Court's decision in *Bumpus v Miller, supra*.[5] While the majority may be "reaffirming" *Bumpus*, it fails to acknowledge a line of subsequent Michigan case law that is contrary to *Bumpus*.[6]

The interpretation of the highway-by-user statute attributed to *Bumpus* by the majority was expressly

[5] The majority also cites *Fuller v Grand Rapids*, 105 Mich 529; 63 NW 530 (1895), and understandably without discussion, because it is inapplicable to any interpretation of the highway-by-user statute. The case does not mention the highway-by-user statute or any case interpreting it.

The road at issue in *Fuller* was established by resolution of the common council, not by use. As noted by the Court, the road was either "appropriated to the public use . . . by condemnation [and] the owner . . . compensated in damages for taking of the land" or it was "dedicated" and the "compensation" took the form of the benefit the plaintiff's predecessor received from the construction of an adjacent public highway. *Id.*, p 532. As to the possibility of dedication, assumably the Court meant dedication by plat (e.g., statutory dedication) by the plaintiff's predecessor because "compensation" in the form of benefits from an adjacent highway is irrelevant in the context of implied dedication.

Further, the road in question was established in 1884 and the plaintiff purchased the property in 1886. *Id.*, p 530. Evidently some time between 1884 and 1886, the plaintiff's predecessor erected a wall. Had this road been established by use, under any precedent of this Court, including *Bumpus*, the wall would have rebutted the implied dedication if an implied dedication were at issue. The *Fuller* Court's discussion that the public's acquiescence to the construction of the wall did not give the plaintiff or her predecessor rights in the roadway demonstrates the inapplicability of the *Fuller* case to the theory of implied dedications.

[6] As the majority points out, *ante*, p 666, I did sign, but did not author *Kent Co Rd Comm v Hunting*, 170 Mich App 222; 428 NW2d 353 (1988). However, the majority has failed to point out that the constitutionality of the highway-by-user statute was not raised in that case and the Court did not address it. The majority further fails to point out that in *Jaschuk v Manistee Co Rd Comm*, 205 Mich App 322; 517 NW2d 318 (1994), the constitutionality of the statute was squarely presented, and I found that creating a four-rod presumption was an unconstitutional interpretation of the statute and an incorrect reading of *Eager, supra*.

held unconstitutional in *Eager v State Hwy Comm'r*
and *Smith v State Hwy Comm'r, supra.* The *Eager*
Court stated:

> Defendant claims that the road was created by user,
> under that statute, and is, therefore, 4 rods wide. For this
> conclusion defendant relies on *Bumpus v Miller*, 4 Mich
> 159, and *Kruger v LeBlanc*, 70 Mich 76 [37 NW 880 (1888)].
> If they were authority therefor, we agree with the trial court
> that the later decisions of this Court, in *Wayne County Sav-
> ings Bank v Stockwell*, 84 Mich 586 [48 NW 174 (1891)],
> *Smith v State Highway Commissioner*, 227 Mich 280, and
> *Trowbridge v State Highway Commissioner*, 296 Mich 587,
> are to the contrary, holding that a highway by user becomes
> such to the width and extent used. *We agree with the trial
> court that privately owned land cannot become public road
> by user beyond the portion used as such merely by the
> above noted statutory pronouncement to that effect. To so
> hold would be violative of the Constitution* of 1850, art 18,
> § 14, Constitution 1908, art 13, § 1,  which prohibited taking
> by the public of private property except upon determination
> of necessity and just compensation "being first made or
> secured." [*Id.*, pp 153-154 (emphasis added).]

This Court recognized in *Smith v State Hwy Comm'r*,
*supra*, p 284, "[t]hat the legislature did not intend by
the act . . . to change existing highways, and that it
could not by legislative enactment take property of
the individual without compensation is settled in this
court."

The majority simply and completely fails to address
this and also ignores a long series of opinions holding
that highways established under the highway-by-user
statute are not presumptively four-rods wide, but are
only as wide as the extent used. See also *Scheimer v
Price*, 65 Mich 638, 639; 32 NW 873 (1887), *Coleman v
Flint & P M R Co*, 64 Mich 160; 31 NW 47 (1887),

*Wayne Co Savings Bank v Stockwell, supra,* p 590, and *Trowbridge, supra.*

The majority's holding also renders meaningless this Court's repeated holding that a highway *or any portion of it* can be lost by nonuse, *Lyle v Lesia,* 64 Mich 16; 31 NW 23 (1887); *Gregory v Knight,* 50 Mich 61, 64; 14 NW 700 (1883); *Smith v State Hwy Comm'r, supra.* Under these cases, even if a highway is initially presumed to be four-rods wide, failure to use a portion of the four rods should return the unused portion to the abutting and contiguous landowner. The current statutory period to establish nonuse for highways that have been laid out is four years. MCL 221.22; MSA 9.23. It would be an absurdity to conclude, as the majority effectively does, that highways actually laid out can be lost by nonuse, but that a portion of highways established by use can never be lost by nonuse. Where there is a formal abandonment of a highway, evidenced by the intent to abandon and actual abandonment, the number of years that have passed is irrelevant. See, e.g., *Roebuck v Mecosta Co Rd Comm,* 59 Mich App 128, 132; 229 NW2d 343 (1975).

2

In addition to this, the majority's reliance on *Bumpus* is in error. The version of the highway-by-user statute at issue in *Bumpus* did not provide that highways by user must be four-rods wide. *Bumpus'* conclusion that the statute did was a mistake. The version of the statute at issue in *Bumpus* discussed four-rods width only in terms of highways that were "laid out" by the "commissioners of highways," not

those highways established by use.[7] *Id.*, p 161. High-
ways established by use, are obviously not "laid out"
by public authorities, but rather are established by
years of use.[8] It is not until the 1881 version of the
highway-by-user statute that the statute applies the
four-rods width to both highways laid out and those
established by use. The cases interpreting the 1881
and subsequent versions of the statute find the major-
ity's literal interpretation to be unconstitutional and
limit the width of highways established by use to the
extent actually used. See, e.g., *Scheimer v Price; Cole-
man v Flint & P M R Co; Wayne Co Savings Bank v
Stockwell; Trowbridge; Eager;* and *Smith v State Hwy
Comm'r, supra.*[9]

---

[7] 1846 RS, tit 6, ch 25, § 18 stated: "Public roads to be laid out by the
commissioners of highways, shall not be less than four rods wide."

[8] Support for this distinction is found in the early incarnations of the
highway-by-user statute. The section addressing which roads were high-
ways clearly distinguished between highways "laid out . . . of which a
record shall have been made" and those highways established by use over
a prescribed period that are "not recorded." See, e.g., 1838 RS, tit 6, ch 4,
§ 42; 1846 RS, tit 6, ch 25, § 29; 1857 CL, tit 9, ch 22, § 1079; 1871 CL, tit 9,
ch 26, § 1268. Also, until 1881, all discussions of width within the high-
way-by-user statute were with respect to highways "laid out," not those
established by use. We would note that the width of such highways varied
significantly in the early years. In 1838, the original enactment stated all
"[p]ublic roads to be laid out by the commissioners of highways, shall not
be less than four rods wide; and private roads shall not be less than two
rods wide," 1838 RS, tit 6, ch 4, § 26. The statutory width remained
unchanged until 1857, when the statute stated, "Public roads to be laid out
according to the provisions of this act, shall not be less than three rods
wide, except in cities and villages . . . ." 1857 CL, tit 9, ch 22, § 1058. In
1871, the Legislature got even more specific by requiring public roads
"laid out according to the provisions of this act . . . not be less than four
rods wide, except in cities and villages," while private roads were not to
be "less than one rod in width." 1871 CL, tit 9, ch 26, § 1256. It seems
unlikely and would be contrary to due process that the Legislature could
or would have intended that the width of highways established by use
vary as much as did highways that were laid out by public authorities.

[9] *McKay v Doty*, 63 Mich 581; 30 NW 591 (1886), without discussion,
assumed that the 1881 version of the highway-by-user statute created a

Further, 1846 RS, tit 6, ch 25, § 29 required use for 20 years or more rather than the mere 10 years required under today's highway-by-user statute. While an additional ten years of notice arising from actual use does not justify taking more than is actually used, given due process considerations discussed in part II, it is certainly a different circumstance than that presented today.

C

The majority next unsuccessfully attempts to distinguish its interpretation of the highway-by-user statute from the United States Supreme Court's holding in *Nollan v California Coastal Comm, supra.* In *Nollan,* the California Coastal Commission imposed a condition on the plaintiff's home reconstruction project allowing public access to the beach across the plaintiff's property. *Nollan* held that because there was no public purpose supporting the condition except the securing of an easement to facilitate public travel across private property, the government was required to condemn the property and pay just compensation. *Id.,* pp 837-839. The majority attempts to distinguish *Nollan* on the ground that "the Michigan statute allows the landowner to assert the right to the property within 10 years after the creation of the road as a public road by use." *Ante,* p 662. The majority's analysis is flawed.

The error of the majority's reasoning regarding *Nollan* is based on its misinterpretation and misapplica-

---

four-rod presumption, but did not address the constitutionality of that presumption. The four-rod presumption was found unconstitutional subsequently in *Smith v State Hwy Comm'r* and *Eager v State Hwy Comm'r, supra.*

tion of two United States Supreme Court decisions, and is further evidence of its failure to recognize the Fifth Amendment's and Const 1963, art 10, § 2's protection of fee simple interests in real property. The practical effect of the majority's interpretation of these cases is to shift the burden of proof from the government to the private property owner, that is, what should be the government's burden of demonstrating acceptance of the fictional offer of implied dedication is twisted to become the property owner's burden of showing that the fictional offer of implied dedication was of less than four rods.

In addition, to justify its conclusion, the majority relies on what is a flawed application of *Bd of Regents* and *Texaco, supra.* The majority cites *Bd of Regents* for the idea that the state may create and define property interests. While this idea is applicable where there is some question regarding whether the person claiming a taking actually has a protected property interest, its application in this context, where the existence of a protected property interest (fee simple title) is not in doubt, is illogical.

*Bd of Regents* addressed whether a nontenured professor had a property right in continued employment. This question has little application regarding whether the ownership of real property is a constitutionally protected interest. *Bd of Regents* in fact recognized that there is no question regarding the protected status of real property when it stated:

> The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. [*Id.*, pp 571-572.]

Despite this, the majority combines the *Bd of Regents'* concept that states may define property interests with, *Texaco, supra,* a case involving the ownership of mineral interests, to justify affording Michigan property owners whose land abuts public highways fee simple interests of "less than absolute duration." *Ante,* p 651.

Citing *Texaco v Short, supra,* a case addressing the constitutionality of an Indiana mineral lapse act, the majority concludes that the state may condition ownership of fee simple interests in real property on the owner's lack of action in opposition to the fictionally implied dedication of four rods within the first consecutive 10 years of use of a lesser amount of the owner's land as a public highway. Reliance on *Texaco* for this holding is unsound.

*Texaco* held that a state statute causing the ownership of mineral interests to lapse if the interest went "unused" for a period of twenty years was constitutional.[10] However, *Texaco* recognized that its decision was of limited application. It stated:

> [T]he length of the period that is afforded to a mineral owner to use the interest, the variety and minimal extent of the actions that constitute a statutory use, and the length of

---

[10] To satisfy the "use" requirement under the Dormant Mineral Rights Act at issue in *Texaco,* an owner of mineral rights had to show actual or attempted production, payment of rents or royalties, payment of taxes, or filing of a statement of claim with the local recorder of deeds. *Texaco, supra,* p 519.

The Michigan dormant mineral rights act, MCL 554.291 *et seq.*; MSA 26.1163(1) *et seq.*, defines the requisite use of oil or gas interests similarly. If an interest in oil or gas is deemed abandoned by nonuse, the interest reverts to the surface owner. This serves the purpose of unifying title to the benefit of the public by facilitating the development of subsurface resources and eliminating fragmented title. *Van Slooten v Larsen,* 410 Mich 21; 299 NW2d 704 (1980).

the statutory grace period are sufficient to entitle the State
to indulge in the assumption that—if no statutory use is
made in a 20-year period and no statement of claim is filed
in the 2-year grace period, if applicable—the mineral owner
has abandoned the property. *We need not decide today
whether the State may indulge in a similar assumption in
cases in which the statutory period of nonuse is shorter
than that involved here, or in which the interest affected is
such that concepts of "use" and "nonuse" have little mean-
ing.* [*Texaco, supra,* p 536, n 28 (emphasis added).]

It is logical, fair, and basic to procedural due process,
as addressed in part II, to assume that a fee simple
interest in land would be accorded the same *if not
more* time to assert ownership than an interest in
minerals. Yet the majority finds constitutional its
interpretation of the 10-year period of the highway-by-
user statute, thereby affording owners of fee simple
interests in real property only half the 20 years
afforded owners of mineral interests to protect their
interest.

Further, the concepts of "use" and "nonuse" have
"little meaning" to a fee simple property owner. *Tex-
aco*'s discussion of fee simple interests of less than
permanent duration was in reference to mineral inter-
ests. Unlike mineral interests, which have historically
been subject to requirements of expedient use, the
concept of "use"[11] in the context fee simple title is
irrelevant.[12] "Use" of property is only relevant to fee

---

[11] The concept of "user," is defined as the "actual exercise or enjoyment
of any right, property, drugs, franchise, etc." Black's Law Dictionary (6th
ed), p 1543. The majority holding that the statutory four rods is literally
four rods unless rebutted during the statutory period wreaks mischief on
the concept of user by allowing the government more than it actually
used.

[12] One case cited by *Texaco* and the majority for the proposition that
states may permit unused or abandoned property interests to lapse after

simple title when it is the use by a person or entity seeking to adversely possess land from the holder of fee simple title. The holder of fee simple title is not required to use his land or to act in any way to prevent his losing it unless there is an adverse user. To take *Texaco*'s statement out of context and apply it to fee simple interests in land is improper. It effectively transforms a fee simple interest into a fee simple defeasible, e.g., a fee that "may be defeated on the happening of an event."[13] The "event" that the majority would have defeat a fee simple is the random and unpredictable decision by public authorities to expand a public highway beyond what has actually been used.

There is simply no justification for the majority to equate the lapsing of mineral interests resulting from neglect with the government's taking of real property without just compensation or actual use. The majority astonishingly and without citation of any authority equates the abandonment of mineral interests to the implied dedication of real property because it "believe[s] that the analysis is the same under either." *Ante*, p 652. *Texaco* described the statutory extinguishment of a mineral interest as the mere "withdrawal of a remedy." *Id.*, p 528. The majority's comparison of abandoned mineral interests to fee simple title appears to be the destruction of a constitutional right masquerading as the mere "withdrawal of a rem-

the passage of time, *Hawkins v Barney's Lessee*, 30 US (5 Pet) 457; 8 L Ed 190 (1831), is inapplicable because it involved an action for ejectment under the law of adverse possession. Similarly, another case relied on by *Texaco* and the majority, *Wilson v Iseminger*, 185 US 55; 22 S Ct 573; 46 L Ed 804 (1902), addressed the lapsing of contracts for ground rent, not the lapse of fee simple title.

[13] Black's Law Dictionary (6th ed), p 615.

edy." See *El Paso v Simmons*, 379 US 497, 506-507; 85
S Ct 577; 13 L Ed 2d 446 (1965).

Support to distinguish the majority's application of
the highway-by-user statute from mineral lapse acts is
found in *Van Slooten v Larsen*, 410 Mich 21; 299
NW2d 704 (1980), where this Court upheld the consti-
tutionality of Michigan's dormant minerals act. As to
the claim that the dormant minerals act violated the
defendant's constitutional protection against the dep-
rivation of property without due process, this Court
distinguished the effect of the dormant minerals act
from statutes that require property owners in "posses-
sion of all" to act within a specified time or lose their
property. The latter types of statute, this Court stated,

> have been held unconstitutional because a state cannot
> require one *in possession of all* that he demands to pros-
> ecute a suit to preserve his interest when no adverse inter-
> est is asserted by suit or possession . . . . [T]he act does
> not unconstitutionally change defendants' property rights
> into mere causes of action. [*Id.*, pp 41-42, citing *Groesbeck v
> Seeley*, 13 Mich 329 (1865) (emphasis added).]

A fee simple interest in real property is the "posses-
sion of all," its owner "is entitled to the entire prop-
erty, with unconditional power of disposition during
one's life, and descending to one's heirs and legal rep-
resentatives upon one's death intestate. Such estate is
unlimited as to duration, disposition, and descendi-
bility." Black's Law Dictionary (6th ed), p 615.

The majority's conclusion that forcing a property
owner to assert his right to property within the four
rods prescribed by statute by some manner "calcu-
lated to interfere with, disturb, or interrupt the use by
the public, *or by instituting an action in court*" ren-

ders his fee simple interest into a mere cause of action. *Ante*, p 655 (emphasis added). This interpretation violates the basic principle of fee simple title and is, therefore, unconstitutional.

The only case applying *Bd of Regents'* concept that the state may define property to real property did so in the context of regulatory taking, not the physical seizure of land. *Lucas v South Carolina Coastal Council*, 505 US 1003, 1030; 112 S Ct 2886; 120 L Ed 2d 798 (1992).[14] Regulatory taking involves the effect of zoning and environmental laws that may in some way limit or affect a property owner's use of his property. However, unlike the majority's interpretation of the highway-by-user statute, such laws do not give the government the right to possess or use the property owner's land. *Lucas* recognized that a state may regulate real property, but held that to impose a regulation that destroys all economically beneficial or productive use of land is unconstitutional. The Court likened such regulation to a physical invasion requiring compensation. *Lucas* recognized that a permanent physical invasion of real property "no matter how minute the intrusion, and no matter how weighty the public purpose behind it" requires compensation. *Id.*, p 1015. The majority's interpretation of the highway-by-user statute effects such a permanent physical invasion of real property and, therefore, is unconstitutional.

Thus, the majority's contention that the benefits of public highways justify the " 'slight burden' " they

---

[14] The majority's interpretation of the highway-by-user statute should be distinguished from cases addressing the regulation of land that does not destroy all economically beneficial use, because the effect of its interpretation literally is to seize property.

would impose is absurd. See *ante*, p 655. It is funda-
mentally contrary to taking jurisprudence to justify
the seizure of property by balancing the value of a fee
simple interest against its potential value and use to
the public. To take *Bd of Regents'* statement that
"[p]roperty interests, of course, are not created by the
Constitution," *id.*, p 577, which refers to what, if any,
property right exists in a nontenured professorship,
and apply it so that it destroys a property owner's fee
simple interest in real property flies in the face of the
Fifth Amendment's admonition: "nor shall private
property be taken for public use, without just com-
pensation," and Const 1963, art 10, § 2.

As interpreted by the majority, the statute effects
the same result that *Nollan* would have found uncon-
stitutional, it "make[s] an easement across [property]
available to the public on a permanent basis . . . ."
*Id.*, p 831. Because the majority's interpretation of the
highway-by-user statute exacts a permanent easement
from all property owners whose land abuts public
highways established by user beyond that actually
used, I find its interpretation unconstitutional.

II

Although I would find dispositive the majority's
substantive affront to the Fifth Amendment's protec-
tion of property and Const 1963, art 10, § 2, I must
also address the majority's procedural due process
analysis under the Fourteenth Amendment where a
person is deprived of real property. The majority cas-
ually rejects the appellee's argument that the four-rod
presumption under the highway-by-user statute vio-
lates due process.

At its most basic level, procedural due process requires fairness. As recited by Nowak & Rotunda, Constitutional Law (4th ed), § 13.8, p 525, the essential elements of procedural due process are:

(1) adequate notice of the charges or basis for government action; (2) a neutral decision-maker; (3) an opportunity to make an oral presentation to the decision-maker; (4) an opportunity to present evidence or witnesses to the decision-maker; (5) a chance to confront and cross-examine witnesses or evidence to be used against the individual; (6) the right to have an attorney present the individual's case to the decision-maker; (7) a decision based on the record with a statement of reasons for the decision.

The fundamental unfairness caused by the majority's interpretation of the highway-by-user statute is the ineffectiveness of any notice that can be ascribed to past or present landowners by the mere enactment of the highway-by-user statute. Citing *Texaco, supra,* the majority states that the enactment of a statute is "generally" enough to afford citizens a "reasonable opportunity to familiarize themselves with the terms of a statute to advise its citizens of the lapse of a property right." *Ante,* p 664. The application of procedural due process standards from a mineral rights case to a case involving fee simple interests in real property is simply incorrect[15] because it is recognized that when

---

[15] There is no case applying *Texaco's* holding to fee simple interests in real property, although *Texaco* stated that Indiana had defined mineral interest to be the equivalent of fee simple estates in land. *United States v Locke,* 471 US 84; 105 S Ct 1785; 85 L Ed 2d 64 (1985), upheld a statute terminating the rights of holders of unpatented claims on federal lands. However, "unpatented" simply means that the holder's rights were not vested, they held mere claims to land, not the fee simple title to it. It should also be noted that Indiana's decision (and any other state's similar decision) to afford mineral estates protection equivalent to fee simple

the property taken is real property, due process requires greater procedural protection. *Schroeder v City of New York*, 371 US 208; 83 S Ct 279; 9 L Ed 2d 255 (1962); *Walker v City of Hutchinson*, 352 US 112; 77 S Ct 200; 1 L Ed 2d 178 (1956).

The United States Supreme Court has held that the notice required when real property is taken is more than the mere enactment of a statute. *Id.* When real property is taken, due process requires that notice be given by mail to both the owner and the mortgagee of the property. *Id.* These cases found that forms of notification such as posting notices on trees and in local papers were insufficient where the name and address of persons directly affected are easily ascertainable. Given that this Court and MCL 211.61a; MSA 7.106 afford a property owner who has become delinquent in property taxes due process including notice by mail reasonably calculated to reach the property owner,[16] it is illogical and unreasonable to find less process due individuals whose property happens to abut highways established by use. It simply defies logic to assume that the enactment of a statute would be or has been sufficient to notify past, present, or future owners of property abutting public highways by user that the intent when the highway was established was to take more than that used.[17] Because the

interests in real property was just that, a decision, not a constitutional mandate.

[16] See *Dow v Michigan*, 396 Mich 192; 240 NW2d 450 (1976).

[17] The concurrence/dissent cites *North Laramie Land Co v Hoffman*, 268 US 276; 45 S Ct 491; 69 L Ed 953 (1925); *Van Slooten, supra*, and *Curley v Beryllium Development Corp*, 281 Mich 554; 275 NW 246 (1937), for the maxim that property owners are presumed to know the law. However, the only case of the three addressing real property was *North Laramie, supra*, which addressed a condemnation statute. Like statutes involving delinquent property taxes discussed above, condemnation stat-

majority's interpretation of the highway-by-user stat-
ute effects a taking of property, notice must be given
beyond that which can be attributed to the mere
enactment of the statute. The majority's interpretation
of the highway-by-user statute ignores reason and
fairness.[18]

Furthermore, the majority's contention that 10
years provides "ample" opportunity to rebut the four-
rod presumption suffers from numerable flaws. For
the modern property owner, it is not just "difficult to
determine the date the highway was created," *ante*, p
663, n 7, but rather it is practically impossible to
demonstrate that a predecessor rebutted the pre-
sumption.[19] The first obstacle is determining when a
road began being used by the public. The second is to

---

utes provide for notice beyond the mere enactment of the statute. It bears
repeating that the majority and the concurrence/dissent's interpretation of
the highway-by-user statute affords no notice to property owners abutting
highways established by use that the government intends to take more
property than has actually been used beyond the mere enactment of the
highway-by-user statute. Further, there is no clear language in the high-
way-by-user statute regarding what procedure a property owner must fol-
low to prevent the establishment of the highway regardless of any pre-
sumption of width.

[18] The concurrence/dissent's analogy to criminal due process afforded
where a person's liberty interest is at stake is unpersuasive. There are
basic differences between the taking of property without more notice
than the enactment of a statute and the general rule in criminal prosecu-
tions that ignorance of the law is no excuse. Most basically, a property
owner's ownership is in violation of no law. Further, where a person's lib-
erty is at stake, due process is guaranteed by law: a person is afforded
*Miranda* rights including the right to an attorney, and an attorney is pro-
vided if the person is indigent, a speedy and fair trial before a judge, the
right to an appeal, etc. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L
Ed 2d 694 (1966).

[19] I also disagree with the majority that a property owner "will know
when a road is created across his property to a relative degree of cer-
tainty." *Id.* Whether a public highway by use was established and when
the establishment began has been the subject of a number of lawsuits.
See, e.g., *Trowbridge, supra.*

determine whether at that time, up to 160 years ago, the property owner acted in any way to rebut the presumption. The third is discovering if ever over the course of the subsequent years the highway was lost by nonuse. Physical proof of ancient fences or agricultural uses may be long faded. The memories of old-timers may well be rendered unavailable by death or may be too imprecise to assist a modern day property owner attempting to exclude public users beyond the extent of the highway actually used.

Most importantly, as addressed in part I(B)(1), our Court has not consistently agreed with the majority's interpretation of the statute or found it to be constitutional. Indeed, a leading authority on Michigan real property law recognized that there was "confusion" in early decisions regarding the scope of a public highway established by user. 2 Cameron, Michigan Real Property Law (2d ed), § 25.9, pp 1162-1163. Cameron concluded, following this Court's decision in *Eager, supra,* however, that it is now "fairly clear" that such highways are limited to the extent of use, even though the statute itself states that public highways " 'shall be 4 rods in width.' " *Id.,* p 1162.

The significance that this Court's inconsistency regarding both the meaning of the highway-by-user statute and whether the majority's interpretation is constitutional would have had on the expectations of property owners and purchasers of lands abutting highways throughout the years is clear. Had a highway by user begun after this Court's decision in *McKay, supra,* in 1886, a consultation by a property owner or potential purchaser of property with an attorney would have revealed that the statute created a highway by user only to the extent of the width

actually used. Legal research after 1924 and this Court's decision in *Smith v State Hwy Comm'r*, *supra*, would have shown the application now proposed to be expressly unconstitutional. It is fundamentally unfair to take a modern property owner's land because of a predecessor's failure to act, when it would have reasonably been understood by the predecessor, given the decisions of this Court, that no action was necessary to limit the width of a public highway to the extent actually used.

The highway-by-user statute has seen significant changes in substance witnessed in the first half century of its creation. The length of time the statute has required to establish use is different from its original enactment in 1838. From 1838 to 1857 the statute prescribed no less than 20 years to establish a highway by user. Note, however, that there is a period between the 1846 and 1857 statutes, because both enactments prescribed 20 years for highways established before their enactment, but only 10 years after. It would have been then, and now under the majority's interpretation, very difficult if not impossible to determine how many years it took to establish a public highway by use if the use began between 1846 and 1857. From 1871 to the present, the statute has prescribed a mere 10 years. Because the majority forces a modern property owner to provide evidence that the use of four rods was rebutted by a predecessor who owned the property when the highway was first established, property owners face the additional difficulty of determining which period of years was sufficient at the time the public highway was first established.

Further, as illustrated in part I(C), the 10-year period provided owners of real property under the highway-by-user statute cannot be found sufficient, given that the dormant minerals act provides 20 years to owners of mineral interests.

Further, there are idiosyncracies in the case law that leave property owners unfairly disadvantaged. For example, it was held that a property owner's mowing within the four-rod area is insufficient to rebut the implied dedication. *Eyde Bros Development Co v Eaton Co Drain Comm'r*, 427 Mich 271, 299; 398 NW2d 297 (1986).[20] However, it was also held that the same and even less frequent mowing by the government is sufficient to establish use. *Rigoni v Michigan Power Co*, 131 Mich App 336, 346; 345 NW2d 918 (1984). This disadvantage seems particularly ironic under the majority's interpretation because the government is permitted to have land it does not even mow, while the individual can mow the same land and yet still lose it.

Turning to the case at hand, the majority states that the property within the four rods of the highway was "never owned" by the current property owners because they presented no evidence that their predecessors rebutted the presumption within the 10-year period. However, the majority cannot tell us when the 10- (or was it 20-) year period ran because there is no evidence regarding the most critical factual information to the resolution of this case, when the highway was actually established by use. While I do not doubt that 52nd Street, at issue in this case, has been a high-

---

[20] *Eyde* held that the presumption of an implied dedication was not rebutted. Its citation of *Bumpus* and the idea that implied dedications under the statute are four-rods wide was dicta. See *Jaschuk*, n 6 *supra*.

way by user for over one hundred years, that fact standing alone cannot justify concluding that the public acquired more land than it actually used. Rather, it illustrates the extreme difficulty, or in truth the practical impossibility, faced by the current property owner in attempting to demonstrate that a predecessor rebutted the majority's unconstitutional four-rod presumption. It cannot be fair to assume that the statute provided adequate notice to the current property owner's predecessor in title, given this Court's confusion with respect to the statute's effect and constitutionality.

I would hold that the mere enactment of this statute provided insufficient notice to afford past or present abutting property owners procedural due process, given that their fee simple interest in real property was and is at stake. Indeed, the only practical notice given to abutting property owners would have been and is public use and maintenance of the road, to the extent it is actually used and maintained.

III

In conclusion, I do not question the importance of highways either historically or presently. Rather I question the government's carte blanche seizure of land, as sanctioned by the majority, beyond that actually used from private property owners for public use without compensation or proof of actual use. I would find that the highway-by-user statute is constitutional as interpreted and applied for nearly a century, that is, a highway by user is only as wide as has actually been used. I would affirm the decision of the circuit court.

BRICKLEY, J., concurred with WEAVER, J.